United States Court of Appeals,

Eleventh Circuit.

No. 96-7080.

Janice ANDREWS, Plaintiff-Appellant,

v.

LAKESHORE REHABILITATION HOSPITAL, HealthSouth Corporation, Defendants-Appellees.

May 15, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-95-AR-3298-S), William M. Acker, Jr., Judge.

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

HULL, Circuit Judge:

Plaintiff Janice Andrews brought racial discrimination and retaliation claims against her employer under section 1981. Plaintiff appeals the district court's *sua sponte* dismissal of her retaliation claim as not cognizable under section 1981. Plaintiff also appeals the district court's subsequent order granting HealthSouth's 12(b)(6) Motion to Dismiss her racial discrimination claim against HealthSouth and denying Plaintiff's Motion to Join LSSI as a party. After review, we reverse.

I. FACTUAL BACKGROUND

A. LSSI and HealthSouth

Plaintiff worked at Lakeshore Rehabilitation Hospital ("the Hospital") from 1980 until her termination on February 14, 1994. During that time, Lakeshore Foundation ("the Foundation") owned and operated the Hospital. The Foundation contracted with Lakeshore Systems Service, Inc. ("LSSI") to provide administrative services to the Hospital.

After Plaintiff's termination, the Foundation leased the Hospital building and equipment to LSSI on October 1, 1994, and LSSI employed all Hospital employees. LSSI also operated the Hospital under the same name of "Lakeshore Rehabilitation Hospital." LSSI's parent company was ReLife, Inc. After LSSI began operating the Hospital, ReLife merged with HealthSouth Corporation ("HealthSouth"). Thus, HealthSouth became LSSI's parent company.

B. Complaint Served on LSSI's Hospital

Plaintiff's Complaint names "Lakeshore Rehabilitation Hospital" as the sole Defendant. The Complaint was filed on December 21, 1995, and delivered by certified mail on January 4, 1996, to the Hospital's address at Lakeshore Rehabilitation Center, 3800 Ridgeway Drive, Homewood, Alabama.[1] At this point, LSSI was leasing and operating the Defendant Hospital as LSSI's business.

The Defendant Hospital's Answer, however, states that it is filed by "Lakeshore Foundation, successor-in-interest to Jefferson Tuberculosis Sanatorium d/b/a/ Lakeshore Hospital." The record does not indicate how the Complaint got from the Defendant Hospital, operated by LSSI, to the Foundation, the prior operator. In any event, the Answer admits that the Defendant Hospital was Plaintiff's employer and is an entity subject to suit. Even though Plaintiff was requesting reinstatement at the Defendant Hospital, the Answer did not assert that Plaintiff had sued the wrong entity or failed to join an indispensable party.

C. District Court *Sua Sponte* Dismisses Retaliation Claim

As the first affirmative defense, the Defendant Hospital's April 26 Answer asserts that Plaintiff failed to state a claim upon which relief could be granted. No party as yet had filed a motion to dismiss. On May 6, however, the district court *sua sponte* dismissed Plaintiff's retaliation

---

[1]The signature on the certified receipt is not clear but appears to be signed "Anthony Davis." The record does not indicate for whom this person works.

claim as not cognizable under section 1981.[2] The case proceeded on the racial discrimination claim alone.

D. Plaintiff's Motion to Amend Complaint to Add HealthSouth

The parties filed a "Report of Parties' Planning Meeting," in which the parties jointly agreed that "Plaintiff(s) should be allowed until October 1, 1996 to join additional parties and to amend the pleadings." Adopting that agreement, the district court's scheduling order states as follows: "Joinder of additional parties-Plaintiff(s) shall have until 10/01/96 to join additional parties. Defendants shall have until 11/01/96 to join additional parties."

Although Plaintiff's Complaint was filed timely against the Defendant Hospital on December 21, 1995, the statute of limitations expired on February 14, 1996. On August 23, 1996, Plaintiff filed a Motion to Amend the Complaint to add HealthSouth as a defendant, which the district court immediately granted on August 29 in light of the scheduling order allowing such joinder. Defendant HealthSouth filed a verified Answer and a separate Motion to Dismiss based on, *inter alia,* the statute of limitations and Plaintiff's failure to join an indispensable party, namely LSSI.

E. Plaintiff's Motion to Add LSSI

As soon as HealthSouth's September 16 verified Answer revealed that LSSI was operating the Defendant Hospital, Plaintiff filed a September 30 Motion to Join LSSI as a defendant. Because this Motion also was filed before the court's deadline for adding parties, the district court's order found that the Motion to Add LSSI was "timely filed." Regarding LSSI, the district court's order states, "[a]s an initial matter this court must determine whether the applicable statute of limitations has expired, because if the statute has not expired then the motions to add additional defendants were

---

[2]The clerk's docket sheet lists entry number 5 as an "Answer" and a "Motion 12(b)(6)"; however, number 5 is only one pleading entitled an "Answer," and no separate motion to dismiss is filed or referred to in that Answer.

timely filed."

Since HealthSouth was a party already and the court found that Plaintiff's Motion to Add LSSI was "timely filed," the district court's order treated both HealthSouth and LSSI as added Defendants and proceeded to examine the sole issue of whether Plaintiff's claims against them were barred by the statute of limitations. Thus, we review whether Plaintiff's claims against HealthSouth and LSSI are barred by the statute of limitations.

## II. STATUTE OF LIMITATIONS

A. Applicability of the Statute of Limitations

Plaintiff asserts that the statute of limitations does not apply because her amendments against HealthSouth and LSSI fall under Rule 25, which allows substitution of parties when a transfer in interest has occurred. Fed.R.Civ.P. 25(c). However, as the district court explained, Rule 25(c) applies only to transfers of interest occurring during the pendency of litigation and not to those occurring before the litigation begins. *See National Ind. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.,* 748 F.2d 602, 610 (11th Cir.1984); *Mizukami v. Buras,* 419 F.2d 1319, 1320 (5th Cir.1969). In this case, Rule 25(c) does not apply because any transfer of interest in the Defendant Hospital to LSSI and HealthSouth occurred before the litigation began. Plaintiff cites two cases, but neither involves a transfer of interest prior to litigation. *See Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1357 (11th Cir.1994) (defendant's assets transferred during the litigation to the substituted party); *In re National Airlines, Inc.,* 700 F.2d 695, 696 (11th Cir.1983) (enforcing a decree against a company that acquired the original defendant after the decree was entered). The district court correctly concluded that Rule 25(c) does not save Plaintiff's amendments from the statute of limitations.

Plaintiff also argues that she avoids the statute of limitations because joining HealthSouth

and LSSI was appropriate under Rule 19, which calls for joinder of parties needed for just adjudication, or under Rule 21, which allows the district court to order joinder "on such terms as are just." Fed.R.Civ.P. 19, 21. We agree with the district court that these arguments also fail because the provisions for joinder of parties under Rules 19 and 21 are not immune from statutes of limitations. *See* 7 Wright, Miller & Kane, Federal Practice and Procedure § 1688; *McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870, 872 (5th Cir.1976), *vacated on other grounds,* 545 F.2d 919 (5th Cir.1977).

B. Relation Back Under Rule 15(c)

Even if the statute of limitations applies, Plaintiff contends her claims against HealthSouth and LSSI are not barred because they relate back under Rule 15(c) to the timely filing of her initial Complaint. *See* Fed.R.Civ.P. 15(c).[3] In holding that Plaintiff's claims did not relate back under Rule 15(c), the district court made these findings of fact in its order:

> It is clearly evident that HealthSouth and LSSI did not receive notice of this lawsuit until after the April 19, 1996 deadline had come and gone.
>
> ... Andrews could have easily discovered the true identity of HealthSouth and LSSI before expiration of the limitations provision.
>
> ... HealthSouth and LSSI could have reasonably assumed that because they were not sued for successor liability in the original pleading, Andrews made a conscious strategic decision to proceed solely against the legal entity, Lakeshore, which actually terminated her.... There is nothing to suggest that HealthSouth and LSSI knew or should have known that but for a mistake in identity an action would have been brought against them.

This case was decided on a Rule 12(b)(6) Motion to Dismiss. While rulings on motions to dismiss

---

[3]Under Rule 15(c), an amendment adding a party may relate back to the date the complaint was filed if (1) the amendment arises out of the conduct, transaction, or occurrence in the complaint, and (2) within the period provided by Rule 4(m) for service, the party to be added (a) receives "such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits," and (b) "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c).

generally are based on the pleadings, the district court here went well beyond the pleadings and found facts not supported by any evidence in the record as the basis for granting the Motion to Dismiss. Except for HealthSouth's verified Answer, the sparse record contained only unverified pleadings and a mail receipt regarding service.[4] There were no admissions in the pleadings to support these facts.

For example, there is no evidence in the record to support the court's finding of fact that LSSI and HealthSouth never received notice of this lawsuit prior to April 9, 1996. HealthSouth and LSSI did not file any affidavits or evidence. If anything, the limited record showed that LSSI may have had notice because at the time the Complaint was delivered by certified mail on January 4 to the Defendant Hospital, LSSI operated the Defendant Hospital and employed all of its employees.[5]

Likewise, the court found that the "true identity of HealthSouth and LSSI was easily discoverable," but HealthSouth's verified Answer admitted that LSSI operated the Hospital under the same name of "Lakeshore Rehabilitation Hospital" as the prior operator, and retained the same employees. The limited record thus showed that the outward appearance of the Hospital was the same when Plaintiff sued in 1995 as when she was fired in 1994. Also, the Hospital's Answer did not assert that Plaintiff had sued the wrong entity or failed to join an indispensable party. The

---

[4]A lease agreement between Lakeshore and LSSI was attached to HealthSouth's Reply opposing Plaintiff's Motion to Join LSSI but was filed without an affidavit or anything authenticating it. Indeed, the letter that accompanied the Reply states that the lease agreement is "not offered as evidence" but will be filed promptly as Exhibit A "[i]f the Court so directs."

[5]Under the law of this circuit, if LSSI had notice of Plaintiff's Complaint, then HealthSouth, as the 100% owner of LSSI, is deemed to have had notice for purposes of Rule 15(c)(3). *See Itel Capital Corp. v. Cups Coal Co.,* 707 F.2d 1253, 1258 (11th Cir.1983); *Marks v. Prattco, Inc.,* 607 F.2d 1153, 1156-57 (5th Cir.1979). This Court has indicated that notice of a complaint to a wholly owned subsidiary may be attributed to its parent under Rule 15(c)(3) because a parent company is not prejudiced by having amendments naming it relate back to the filing of a complaint against its wholly owned subsidiary. *See Itel,* 707 F.2d at 1258; *Marks,* 607 F.2d at 1156-57.

district court's findings of fact represent speculation without supporting evidence about what LSSI and HealthSouth knew or should have known or reasonably could have assumed.

In short, we do not decide whether the district court abused its discretion in applying the facts of the case to the requirements of Rule 15(c).[6] We do not say these facts are not true. We simply hold that there was no evidence in the sparse record to support the findings of fact against which the district court applied the requirements of Rule 15(c) and exercised its discretion.[7] Therefore, we reverse the district court's order granting HealthSouth's Motion to Dismiss and denying Plaintiff's Motion to Add LSSI. Because the relation back issue under the particular facts here necessarily requires consideration of matters outside the pleadings, the issue is more appropriately treated as one for summary judgment and disposed of as provided in Rule 56. *See*

---

[6]Application of Rule 15(c) is reviewed for abuse of discretion. *See Hunt v. Department of the Air Force, Div. of USA,* 29 F.3d 583, 587 (11th Cir.1994); *Marks v. Prattco, Inc.,* 607 F.2d 1153, 1156-57 (5th Cir.1979); *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286, 1299-1300 (5th Cir.1971).

[7]The dissent states that "Civil Rule 15(a) controls whether or not a party will be joined; and in the light of Civil Rule 15(a), I cannot say the district court abused its discretion in denying Plaintiff's motion to join LSSI." As outlined above, neither do we. Also, since the district court found that the motion to add LSSI as an additional defendant was "timely filed," the district court, and the parties' briefs on appeal, correctly never cite nor discuss Rule 15(a) but examine solely whether the amended claim against LSSI related back under Rule 15(c) for purposes of the statute of limitations. Thus, abuse of discretion under Rule 15(a) is not even an issue here. The district court's denial of the motion to join LSSI under Rule 15(c) effectively was a determination that although the motion to join was "timely filed," it was futile to join LSSI because Plaintiff's claim against LSSI did not relate back under Rule 15(c) and was barred by the statute of limitations.

The dissent also states that the motion to add LSSI "was filed after the statute of limitations had "expired'; so, in this sense at least the motion was untimely." However, the August 23 motion to join HealthSouth was also filed after the statute of limitations had expired on February 14, and the district court granted that motion to join on August 29.

Fed.R.Civ.P. 12(b).[8]

### III. PLAINTIFF'S SECTION 1981 RETALIATION CLAIM

We turn to the district court's *sua sponte* dismissal of Plaintiff's retaliation claim and whether retaliation claims are cognizable under section 1981 as amended by the 1991 Civil Rights Act ("1991 Act").[9] We first review the recent history of retaliation claims under section 1981 because of the changing law in this area during the past decade.

A. Section 1981 before 1991 Act

Before the 1991 Act, section 1981 provided only that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). Prior to 1989, circuits interpreting "make and enforce contracts" held that section 1981 encompassed an employee's claim for an employer's race-based retaliation during the employment contract. *See, e.g., Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1229 n. 15 (5th Cir. Unit B 1982); *see also Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir.1987); *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 416 (8th Cir.1984); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38, 42-43 (2d Cir.1984); *Goff v. Continental Oil Co.,* 678 F.2d 593, 597-99 (5th Cir.1982). Specifically, in *Pinkard v. Pullman-Standard,* 678 F.2d 1211 (5th Cir. Unit B 1982), this Court held that "[a] claim under § 1981 may be based upon retaliatory action taken against an

---

[8]Rule 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).

[9]The alleged retaliatory conduct occurred here on February 14, 1994, well after the November 21, 1991 effective date of the 1991 Act. Whether retaliation claims are cognizable under § 1981 is a question of law reviewed *de novo. See, e.g., Jackson v. Chater,* 99 F.3d 1086, 1092 (11th Cir.1996).

employee for the employee's lawful advocacy of the rights of racial minorities." *Id.* at 1229 n. 15.[10]

B. Supreme Court's *Patterson* Decision

However, in 1989, the Supreme Court narrowed the reach of section 1981. In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that the "make and enforce contracts" language in section 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process," *id.* at 179, 109 S.Ct. at 2374 and not "conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Id.* at 171, 109 S.Ct. at 2369.

This holding drew into question many circuit court decisions recognizing post-hiring discrimination claims under section 1981. Thereafter, this circuit and others held that *Patterson* foreclosed most retaliation claims under section 1981. In *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.1990), this Court explained that because of *Patterson*'s definition of "make and enforce," "an employer's retaliatory conduct falls under section 1981 only when the employer aims to prevent or discourage an employee from using legal process to enforce a specific contract right." *Id.* at 1534-35; *see also Vance v. Southern Bell Telephone & Telegraph Co.,* 983 F.2d 1573, 1577 (11th Cir.1993) (reaching the same conclusion regarding other post-hiring claims); *Jones v. Firestone Tire & Rubber Co.,* 977 F.2d 527, 534 (11th Cir.1992) (same).

C. 1991 Act Amends Section 1981

In response to *Patterson* and its progeny, Congress enacted the 1991 Act and added the

---

[10]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981 and all Fifth Circuit Unit B decisions after October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc); *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 33 (11th Cir.1982).

current subsection (b) to section 1981, which gives a new, broader definition to the terms "make and enforce contracts" in subsection (a). Subsection (b) states that " "make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Both the Supreme Court and this Court have acknowledged that the 1991 Act was a direct response to *Patterson* and its progeny. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 251, 114 S.Ct. 1483, 1489, 128 L.Ed.2d 229 (1994); *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 302, 114 S.Ct. 1510, 1514, 128 L.Ed.2d 274 (1994) (explaining that section 1981's prohibition against racial discrimination now "applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations"); *Vance,* 983 F.2d at 1577; *Jones,* 977 F.2d at 534. This Court has noted that "one effect of the 1991 Act ... is to make the rule in *Patterson* obsolete by statutorily adding certain categories of post hiring discrimination to the list of practices liable to suit under section 1981." *Vance,* 983 F.2d at 1577.

In 1994, the Supreme Court next faced whether to apply the 1991 Act retroactively to claims arising prior to the Act's effective date. *See generally Rivers,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274. In *Rivers,* the plaintiff contended that the 1991 Act should apply retroactively, arguing that the 1991 Act only restored pre-*Patterson* law. *Id.* at 304, 114 S.Ct. at 1515. The Supreme Court disagreed and held that the 1991 Act does not apply retroactively. *Id.* at 304-314, 114 S.Ct. at 1515-20. The Court described the Act's function as " "expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination,' " *id.* at 308, 114 S.Ct. at 1517 (quoting Civil Rights Act of 1991, Pub.L. No. 102-166 § 3(4), 105 Stat. 1071 § 3(4) (1991)), and concluded that "the text of the Act does not support the argument that § 101 of the 1991 Act was

intended to "restore' prior understandings of § 1981 as to cases arising before the 1991 Act's passage." *Id.*[11]

D. Retaliation Claims Arising after 1991 Act

Against this background and shortly after *Rivers,* the district courts in this circuit began addressing the effect of the 1991 Act on post-enactment retaliation claims. Although the district court in this case held that post-enactment retaliation claims are not cognizable even after the 1991 Act, numerous district courts in this Circuit for several years consistently have concluded that the amended section 1981 now covers post-hiring retaliation claims arising after the 1991 Act. Most have relied primarily on the expanded language of section 1981 in the 1991 Act. *See Collins v. Executive Airlines, Inc.,* 934 F.Supp. 1378, 1382 (S.D.Fla.1996); *Cabiness v. YKK (USA), Inc.,* 859 F.Supp. 582, 588 (M.D.Ga.1994), *aff'd without opinion,* 98 F.3d 1354 (11th Cir.1996); *Lightner v. Ariton,* 902 F.Supp. 1489, 1495-96 (M.D.Ala.1995). Others have cited the legislative history of the 1991 Act, replete with expressions of Congress's intent to broaden section 1981 specifically to cover race-based retaliation in all phases of contractual relations. *See Williams v. Carrier Corp.,* 889 F.Supp. 1528, 1530 (M.D.Ga.1995); *Patterson v. Augat Wiring,* 944 F.Supp. 1509, 1519-21 (M.D.Ala.1996).[12] One district court viewed the 1991 Act as restoring this Circuit's pre-*Patterson*

---

[11]Section 101 of the 1991 Act adds the new subsection (b) defining "make and enforce contracts" in subsection (a). Civil Rights Act of 1991, Pub.L. No. 102-166 § 101, 105 Stat. 1071 § 101 (1991).

[12]For example, the House Committee's Report states that the list in subsection (b) is illustrative and not exhaustive and that subsection (b) includes claims for race-based harassment, discharge, demotion, promotion, transfer, retaliation, and hiring, as follows:

> Section 210 would overrule Patterson by adding at the conclusion of section 1981 a new subsection (b).... The Committee intends this provision to bar all race discrimination in contractual relations. The list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of

law, which recognized in *Pinkard* a retaliation claim under section 1981. *Crumpton v. St. Vincent's Hospital,* 963 F.Supp. 1104, 1118-19 (N.D.Ala.1997) (citing *Pinkard,* 678 F.2d at 1229 n. 15).

This Circuit Court did not address the effect of the 1991 Act on post-hiring retaliation claims until 1997.[13] This Court's first published section 1981 retaliation decision involving conduct after the 1991 Act was *Little v. United Technologies,* 103 F.3d 956 (11th Cir. Jan.22, 1997). Appellees in this case contend that *Little* suggests that the amended section 1981 still does not encompass post-enactment retaliation claims. However, *Little* concludes only that a prima facie case was not presented by the white plaintiff because the plaintiff did not allege discrimination "due to his race; that is, Little [did] not contend that [his employer] discriminated against him because he was white." *Id.* at 961. Instead, Plaintiff Little alleged retaliation occurred because he complained that a coworker on one occasion had made a comment to him that was a racial slur derogatory toward blacks. *Id.* at 956, 959.

Moreover, in a case shortly after *Little,* this Court noted that the Eleventh Circuit had "not yet addressed the types of retaliation claims cognizable under § 1981 in light of the Civil Rights Act of 1991." *Reynolds v. CSX Transportation, Inc.,* 115 F.3d 860, 868 n. 10 (11th Cir.1997).

Thus, the issue remained open when this Court briefly discussed retaliation claims under section 1981 in a third 1997 decision: *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th

---

harassment, discharge, demotion, promotion, transfer, retaliation, and hiring.

H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 (1991) *reprinted in* 1991 U.S.C.C.A.N. 549, 630.

[13]No other circuit has discussed the issue directly. However, two cases from other circuit courts appear to presume a retaliation claim may be brought under the amended section 1981. *See Steverson v. Goldstein,* 24 F.3d 666, 670 (5th Cir.1994) (affirming a jury verdict finding retaliation in a claim brought under the amended section 1981); *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 258 (8th Cir.1996) (listing the elements of a section 1981 retaliation claim before holding that the plaintiff had failed to establish a prima facie case).

Cir.1997). The main issues in *Jackson* were whether the district court abused its discretion in certifying a class and in allowing communication with proposed class members before class certification. *Id.* at 1104-07. The *Jackson* court did state that "Plaintiffs' claim for retaliation, however, may proceed under section 1981(b)." *Id.* at 1007. The Court then cited with approval both *Pinkard* and *Augat Wiring* as "allowing section 1981 retaliation claims after passage of Civil Rights Act of 1991 and enactment of section 1981(b)." *Id.* at 1007 (citing *Pinkard,* 678 F.2d at 1229 n. 15; *Augat Wiring,* 944 F.Supp. at 1518-21). Thus, *Jackson*'s recognition of post-hiring retaliation claims under section 1981 appears based not only on the pre-*Patterson* law of this Circuit in *Pinkard,* but also on the 1991 Act expanding section 1981.

We have reviewed the history of section 1981 from *Pinkard* to *Patterson* and *Sherman,* to the 1991 Act and *Rivers,* and finally to *Little* and *Jackson,* so that the differing results in these retaliation cases can be put in the context of the prevailing law at the time of each decision. This review reveals that despite the changing definition of "make and enforce," retaliation claims have remained viable to some limited extent throughout this time period.

Nonetheless, this history also indicates that the type of retaliation claims that may be proved still depends on when the retaliation occurred and the specific nature of the retaliation claim. As to retaliatory conduct occurring before the effective date of the 1991 Act, only a limited class of claims is cognizable because of *Patterson*'s narrow definition of "make and enforce." *See Sherman,* 891 F.2d at 1534-35 (explaining that because of *Patterson,* "an employer's retaliatory conduct falls under section 1981 only when the employer aims to prevent or discourage an employee from using the legal process to enforce a specific contract right"). Even as to retaliation after the 1991 Act, not all retaliation claims are necessarily cognizable. *See Little,* 103 F.3d at 961 (finding no prima facie case of retaliation under section 1981 when a white plaintiff claimed he was fired for complaining about

a co-worker's derogatory remark against blacks). *But see Jackson,* 130 F.3d at 1007 (indicating that plaintiffs' section 1981 retaliation claim may proceed based on plaintiffs' allegations that they were fired for refusing to participate in employer's discrimination against non-white customers).

Turning to the particular facts here, Plaintiff Andrews claims that her employer retaliated by terminating her in February 1994 for filing a December 1992 EEOC claim for discrimination based on her race. Plaintiff's claim alleges discrimination based on her race and retaliation due to filing a race-based claim with the EEOC. Thus, Plaintiff's retaliation claim differs markedly from the retaliation claim in *Little*.[14] The above history indicates that this specific type of post-1991 retaliation claim brought by Plaintiff Andrews is cognizable under the amended section 1981. *See Jackson,* 130 F.3d at 1007; *Pinkard,* 678 F.2d at 1229 n. 15. Thus Plaintiff's retaliation claim may proceed under section 1981.

## IV. CONCLUSION

For these reasons, we REVERSE the district court's dismissal of Plaintiff's section 1981 retaliation claim. We also REVERSE the district court's order granting Defendant HealthSouth's Motion to Dismiss and denying Plaintiff's Motion to Add LSSI as a defendant. This case is REMANDED for further proceedings consistent with this opinion.

EDMONDSON, Circuit Judge, concurring in the result in part, and dissenting in part:

I concur in the result, except I dissent from that part of the decision requiring LSSI to be added as a defendant.

I do not understand the district judge's opinion and—more important—his decision about

---

[14]In this case, we need not address the differences in *Jackson* and *Little* because Plaintiff's claim of retaliation for her filing an EEOC racial discrimination charge is significantly different from the claims in those cases and is a type of retaliation claim now clearly cognizable under the amended section 1981.

LSSI in the same way that today's court responds to what he wrote.  I do not understand, for example, that the district judge held that plaintiff's motion to join LSSI was timely filed.  The district judge wrote that the motion was filed after the statute of limitations had "expired";  so, in this sense at least the motion was untimely.  And I cannot say that the district court erred in finding that plaintiff's "inexcusable neglect" was the reason LSSI was not earlier named as a party:  the burden was on plaintiff, as the movant, to show cause for her neglect and the delay.  As I understand the law, Civil Rule 15(a) controls whether or not a party will be joined;  and in the light of Civil Rule 15(a), I cannot say the district court abused its discretion in denying plaintiff's motion to join LSSI.

About 42 U.S.C. § 1981, I accept that it includes claims for retaliation such as this one.  In this circuit, a retaliation claim was part of our section 1981 law pre-*Patterson.*  (By the way, this view—whether accurate or inaccurate—of the law seems to have been prevalent in the federal courts nationwide.)  And, I think that Congress in the 1991 Civil Rights Act did not intend to cut back on section 1981's scope as the scope was understood before *Patterson.*