783 So.2d 1122 (2001)
Michael J. OLMSTED, Appellant,
v.
Robert A. EMMANUEL, individually; Erick M. Drlicka, individually; and Emmanuel, Sheppard & Condon, P.A., Appellees.
No. 1D00-1884.
District Court of Appeal of Florida, First District.
March 27, 2001.
Rehearing Denied April 27, 2001.
*1123 Michael T. Callahan of Callahan Law Firm, Tallahassee, and John Davis of *1124 Spriggs & Davis, P.A., Tallahassee, for Appellant.
Alan R. Horky and Jason W. Peterson of Fuller, Johnson & Farrell, P.A., Pensacola; Fred M. Johnson, Tallahassee, for Appellees.
WEBSTER, J.
Appellant (Olmsted) seeks review of a final order dismissing his legal malpractice claim against appellees with prejudice, and entering summary judgment in favor of appellees on his claim that they charged "an excessive and illegal [attorneys'] fee under Florida law." We conclude that the trial court correctly determined that, on the undisputed facts, (1) Olmsted could not establish that he would have prevailed in the underlying litigation but for appellees' negligence; and (2) the attorneys' fee appellees charged Olmsted was neither excessive nor illegal under Florida law. Accordingly, we affirm.

I.
The pertinent facts are undisputed. Appellee Emmanuel, Sheppard & Condon, P.A., is a law firm having its place of business in Pensacola, Florida. Appellees Emmanuel and Drlicka are attorneys employed by that firm. In 1994, Olmsted retained appellees to represent him, as the plaintiff, in a previously filed action then pending against Olmsted's former employer, Taco Bell, in the United States District Court for the Northern District of Florida, Pensacola Division. To the extent pertinent, the written "Contingency Fee Contract" entered into by the parties provided that the law firm would be entitled to a contingent fee in the amount of "40% of any recovery up to $1 Million Dollars from the time of filing an answer or the demand for an appointment of arbitrators," and to "[a]n additional 5% of any recovery after Notice of Appeal is filed." The contract further provided that those "percentages [we]re to be figured against the gross proceeds before any deductions, including court-awarded attorney's fees but not including court-awarded costs."
Following their employment, appellees filed an amended complaint in the federal court action against Taco Bell. That amended complaint alleged that Olmsted, a white male employed as an assistant manager at a Pensacola Taco Bell restaurant, had been unlawfully fired after complaining to superiors about discriminatory employment practices against blacks at the restaurant. It sought relief, including damages, pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3) and 42 U.S.C. § 1981.
A jury eventually returned a verdict awarding Olmsted $10,000 in back pay, $450,000 in compensatory damages, and $3,000,000 in punitive damages. Taco Bell filed a number of post-trial motions, including one requesting that the damage award be reduced pursuant to 42 U.S.C. § 1981a(3), which limits the amount recoverable in Title VII cases for future economic losses, all non-economic losses, and punitive damages to $300,000. Appellees responded that Olmsted was entitled to the full amount of damages awarded by the jury because, while section 1981a(3) limits the amount of damages recoverable in Title VII actions, it does not impose any limit regarding recoverable damages in section 1981 actions. Taco Bell replied that Olmsted had abandoned any claim pursuant to section 1981 by failing to invoke it as a basis for relief in the pretrial stipulation. The federal district court agreed with Taco Bell that, by failing to invoke section 1981 as a basis for relief in the pretrial stipulation, Olmsted had abandoned any claim pursuant to that statute. Accordingly, it reduced the damage award to $310,000 ($10,000 in back pay plus the $300,000 statutory cap). By a subsequent order, the federal district court granted *1125 Taco Bell's post-trial motion for judgment as a matter of law, concluding that Olmsted had failed to establish a prima facie case of retaliation under Title VII.
Appellees then filed an appeal on behalf of Olmsted in the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit reversed the district court's order setting aside the jury's verdict and granting judgment as a matter of law to Taco Bell, concluding "that the jury's verdict [wa]s amply supported by the testimony adduced at trial." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1461 (11th Cir.1998). However, the Eleventh Circuit also concluded that the district court had not abused its discretion when it held that Olmsted had abandoned any claim he might have had pursuant to 42 U.S.C. § 1981. Id. at 1461-63. Accordingly, it affirmed the reduction of the damage award to $310,000. Id. at 1463.
Following additional litigation in both the Eleventh Circuit and the district court, Olmsted and Taco Bell agreed to settle the case for $491,197.12, of which $173,515.31 represented a negotiated attorneys' fee to which Olmsted was statutorily entitled. From that sum, appellees deducted $7,681.81 in taxable costs, leaving $483,515.31. Appellees kept $217,581.88 as a fee, pursuant to the "Contingency Fee Contract," and the remaining $265,933.43 was distributed to Olmsted.
Roughly a year later, in July 1999, Olmsted sued appellees, demanding damages for legal malpractice; and a return of the entire attorneys' fee, together with prejudgment interest and "consequential damages," because the fee was "excessive and illegal ... under Florida law." The trial court eventually granted appellees' motions for dismissal with prejudice as to the malpractice claim and summary judgment as to the fee claim. Regarding the malpractice claim, the trial court concluded (among other things) that the undisputed evidence was legally insufficient to establish that Olmsted would have prevailed on the retaliation claim pursuant to 42 U.S.C. § 1981 but for appellees' negligence, and that such a finding would be "sheer speculation." Regarding the fee claim, the trial court concluded that the fee was computed according to the terms of the "Contingency Fee Contract," and that the contract appeared to be permissible under rule 4-1.5 of the Rules Regulating the Florida Bar. This appeal follows.

II.
To prevail on a claim of legal malpractice, a plaintiff must establish the existence of three essential elements: (1) that the defendant attorney was employed by the plaintiff; (2) that the defendant attorney neglected a reasonable duty owed to the plaintiff; and (3) that such negligence was the proximate cause of loss to the plaintiff. E.g., Anderson v. Steven R. Andrews, P.A., 692 So.2d 237, 240 (Fla. 1st DCA 1997); Hatcher v. Roberts, 478 So.2d 1083, 1087 (Fla. 1st DCA 1985). "To be liable for malpractice arising out of litigation, the attorney must be the proximate cause of the adverse outcome of the underlying action which results in damage to the client." Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). The plaintiff must "demonstrate[] that there is an amount of damages which [he] would have recovered but for the attorney's negligence." Sure Snap Corp. v. Baena, 705 So.2d 46, 49 (Fla. 3d DCA 1997). Thus, in a case such as this, the plaintiff has to prove that he "would have prevailed on the underlying action but for the attorney's negligence." Tarleton v. Arnstein & Lehr, 719 So.2d 325, 328 (Fla. 4th DCA 1998). In this case, there is no dispute about the facts that Olmsted retained appellees and that appellees neglected a reasonable duty owed to Olmsted when they failed to invoke 42 U.S.C. § 1981 as a basis for relief *1126 in the pretrial stipulation, resulting in the holding that any claim pursuant to section 1981 had been abandoned. Here, the dispute relates to the third element, i.e., whether Olmsted can establish that appellees' negligence was the proximate cause of a loss to him.
Olmsted maintains that appellees' negligence was the proximate cause of a loss of some $3,150,000 to him. He argues that, but for appellees' negligence, he would have been successful on his section 1981 claim as well as his Title VII claim, and that, unlike the latter, the former is not subject to any damage cap. Therefore, he would have been able to recover from Taco Bell the full amount of the jury's $3,460,000 verdict, rather than the $310,000 he did recover. Appellees respond that Olmsted cannot establish that he would have been successful on the section 1981 claim, and that his argument to the contrary is nothing more than mere speculation.

A.
Olmsted contends, first, that appellees are estopped from "claim[ing] that [his] damages in excess of $310,000 are now a matter of `speculation,' ... since they took a contrary position on the matter throughout the proceedings in the Federal Court." In other words, Olmsted maintains that, because appellees argued throughout the federal litigation that he had a valid claim under section 1981, they should be precluded from taking a contrary position in their defense of this malpractice action. We are unable to agree.
Florida recognizes the equitable doctrine of judicial estoppel, which prevents litigants from taking totally inconsistent positions in separate judicial proceedings to the prejudice of the adverse party. E.g., Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610 (1934); Ramsey v. Jonassen, 737 So.2d 1114 (Fla. 2d DCA 1999); Dunne v. Somoano, 550 So.2d 5, 7 (Fla. 3d DCA 1989). However, in order to work an estoppel, the parties must be the same, the same issues must be involved, and the position assumed in the former trial must have been successfully maintained. Chase, 156 So. at 610; Ramsey, 737 So.2d at 1116. Here, appellees were not parties in the federal litigation, and the issue of whether Olmsted had a claim under section 1981 was never addressed on the merits in the federal litigation. Accordingly, we conclude that appellees are not estopped from arguing that the section 1981 claim would not have been successful. Although there are no Florida cases directly on point, our conclusion is supported by Shapiro v. Butler, 273 A.D.2d 657, 709 N.Y.S.2d 687, 690 (App.Div.2000), which held that the doctrine of judicial estoppel did not bar an attorney and law firm from arguing in their former clients' legal malpractice action against them that the former clients would not have prevailed in a federal civil action against the clients for alleged illegal interception and disclosure of telephone conversations where the attorney and law firm had not been parties to the federal action and the attorney's position in that action had not been adopted by the court.

B.
The parties agree that the determinative question regarding the issue of whether Olmsted's malpractice claim should have been allowed to proceed is whether, given the undisputed facts, a reasonable person could have found that, but for appellees' negligence, Olmsted would have prevailed on his section 1981 retaliation claim. The trial court concluded that no view of the evidence would support a finding that Olmsted would have prevailed but for appellees' negligence, and dismissed the claim with prejudice. We agree.
*1127 Olmsted's Title VII and section 1981 claims were both based upon allegations that Olmsted, who is white, was fired in retaliation for complaining to superiors about employment practices that discriminated against blacks. As Olmsted correctly points out, several federal courts have determined that such allegations are sufficient to state a claim for relief under section 1981. See, e.g., Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir.) (an employee may claim protected status under section 1981 for advocacy of minorities even if the employee is not a member of a recognized protected group), cert. denied, ___ U.S. ___, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000); Skinner v. Total Petroleum, Inc., 859 F.2d 1439 (10th Cir. 1988) (a white employee who was not fired because of his race, but who claimed that he was fired because he assisted a black co-employee with the co-employee's EEOC claim, could maintain a section 1981 action against his former employer); Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir. 1977) (a white plaintiff has standing to sue his former employer under section 1981 for discharging him in alleged retaliation for protesting the alleged discriminatory firing of a black co-employee); DeMatteis v. Eastman Kodak Co., 511 F.2d 306 (2d Cir.1975) (a white employee has standing under section 1981 to sue his former employer for allegedly forcing him into premature retirement because he sold his house in a neighborhood inhabited primarily by white employees to a black fellow employee). However, the critical question for purposes of our inquiry is whether the Eleventh Circuit would recognize such a claim.
In Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956 (11th Cir.1997), the plaintiff, who was white, made claims alleging violations of both Title VII and section 1981. The trial court granted summary judgment in favor of the employer, and the plaintiff appealed. The Eleventh Circuit affirmed. Regarding the section 1981 claim, its holding appears to have been that the plaintiff had failed to state a claim because he had not alleged "that the discrimination or retaliation allegedly levelled against him was due to his race; that is, [he] d[id] not contend that [the employer] discriminated against him because he was white." Id. at 961. Our conclusion that such was the court's holding is buttressed by the following language, taken from the end of the opinion: "Finally, with respect to Little's cause of action under 42 U.S.C. § 1981, we conclude that he failed to allege that the discrimination at issue was related to his race. Accordingly, we AFFIRM." Id. See Arthur L. Goodhart, Determining the Ratio Decidendi of a Case, 40 Yale L.J. 161 (1930) (discussing the distinctions between the holding and dicta). We find further support for our reading of Little in Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405 (11th Cir.1998). In Andrews, the court said that "Little concludes only that a prima facie case was not presented by the white plaintiff because the plaintiff did not allege discrimination `due to his race; that is, Little [did] not contend that [his employer] discriminated against him because he was white.'" Id. at 1412. In reversing the trial court's dismissal of the plaintiff's section 1981 claim, the court distinguished Little, saying "[p]laintiff's claim alleges discrimination based on her race and retaliation due to filing a race-based claim with the EEOC. Thus, Plaintiff's retaliation claim differs markedly from the retaliation claim in Little." Id.
Olmsted cites three cases for the proposition that the Eleventh Circuit has recognized a section 1981 retaliation claim like his. However, none of those cases supports the proposition that a white employee may file a retaliation claim under section 1981 when he alleges that the retaliation *1128 was in response to complaints about employment practices that discriminated against a minority, rather than because of his race. In Reynolds v. CSX Transportation, Inc., 115 F.3d 860 (11th Cir.1997), cert. granted and vacated, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998), which was decided some five months after Little, even though the plaintiff was black, the court expressly "decline[d] to address whether [her] claims [we]re of the type that are cognizable under § 1981 as amended." Id. at 868 n. 10. In Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir. 1997), the court's statement that the retaliation claim of a plaintiff class could proceed under section 1981 was dicta (id. at 1007), and there is no mention of the class members' race. Finally, in Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405 (11th Cir.1998), the plaintiff, who was black, alleged retaliation because of her race. Id. at 1412.
Olmsted also relies on dicta contained in a footnote in the Eleventh Circuit's opinion in his appeal. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1463 n. 4 (11th Cir.1998). We concede that language in that footnote appears to represent an attempt to back away from the holding in Little. However, the language is clearly dicta. Moreover, in that footnote, the court acknowledges that its "prior decisional law leaves unclear whether Olmsted could have prevailed on his § 1981 claim even if we were to find that the claim had not been abandoned in the pretrial statement." Id. Given this language, and what we perceive to have been the holding in Little, we are forced to conclude that, on the undisputed evidence, Olmsted could not establish that, but for appellees' negligence, he would have prevailed on his section 1981 retaliation claim. To reach a contrary conclusion would require us to speculate that, if squarely faced with the question, the Eleventh Circuit, en banc, would recede from Little. Accordingly, we affirm the trial court's dismissal with prejudice of Olmsted's malpractice claim.

III.
In count two of his amended complaint, Olmsted alleged that the contingent fee charged by appellees was "excessive and illegal ... under Florida law." According to Olmsted, the "Contingency Fee Contract" was "void and illegal under Florida law" to the extent that it provided for the fee to be computed based upon the amount of the statutory attorneys' fee recovered, as well as the damage award. He demanded that the entire fee be returned, together with prejudgment interest and "consequential damages." The trial court concluded that the undisputed facts established that the fee charged was computed according to the "Contingency Fee Contract" signed by the parties, and that the contract appeared to be permissible under rule 4-1.5 of the Rules Regulating the Florida Bar. Accordingly, it granted summary judgment in favor of appellees.
Appellees argue that Florida law governing contingent fee contracts does not apply in cases involving federal law brought in federal court. We disagree. The rights and obligations of parties to a contingent fee contract involving federal litigation are governed by state law. Zaklama v. Mount Sinai Med. Ctr., 906 F.2d 650, 652 (11th Cir.1990). Because the contract here was executed in Florida, and appellees are members of The Florida Bar, we conclude that its validity is governed by Florida law.
Olmsted argues that this issue is controlled by World Service Life Insurance Co. v. Bodiford, 537 So.2d 1381 (Fla.1989), where the court appears to have held that an attorney was not entitled, pursuant to a contingent fee contract, to a percentage of the statutory attorneys' fee recovered. *1129 We are unable to agree that World Service is controlling. The court's opinion contains no factual recitation, provides no analysis, and cites no authority for its conclusion. Moreover, nothing in the opinion suggests that a contract such as that between the parties in this case, which expressly states that the gross proceeds based upon which the fee is to be computed will include "court-awarded attorney's fees," is unenforceable, as against public policy or for some other reason.
A Florida contingent fee contract entered into by a member of The Florida Bar that fails to adhere to the rule governing contingent fee contracts is against public policy, and is unenforceable by the member of The Florida Bar who violated the rule. Chandris, S.A. v. Yanakakis, 668 So.2d 180, 185-86 (Fla.1995). Florida contingent fee contracts are governed by rule 4-1.5(f) of the Rules Regulating the Florida Bar. The contract in this case essentially tracks the language of that rule, which allows a contingent fee of "40% of any recovery up to $1 million" "[a]fter the filing of an answer or the demand for appointment of arbitrators," and "[a]n additional 5% of any recovery after institution of any appellate proceeding is filed." R. Regulating Fla. Bar 4-1.5(f)(4)(B)(i)b & d. The rule does not define "recovery." In the absence of any definition, the parties undertook to provide one in their contract, explicitly stating that "recovery" would include "the gross proceeds before any deductions, including court-awarded attorney's fees but not including court-awarded costs." In the absence of any clear statement of intent in the Rules Regulating the Florida Bar that such a definition of "recovery" is prohibited, we hold that it is not. Accordingly, we affirm the trial court's entry of summary judgment on Olmsted's claim that appellees charged "an excessive and illegal [attorneys'] fee under Florida law."

IV.
Based on the foregoing analysis, we affirm the trial court's dismissal with prejudice of Olmsted's legal malpractice claim because Olmsted could not establish that he would have prevailed on his 42 U.S.C. § 1981 retaliation claim in federal court but for appellees' negligence. We likewise affirm the trial court's summary judgment in favor of appellees on Olmsted's claim that appellees charged "an excessive and illegal [attorneys'] fee under Florida law" because there is nothing in the Rules Regulating the Florida Bar to indicate that the term of the parties' contingent fee contract which defined "recovery" was impermissible.
AFFIRMED.
ERVIN and LEWIS, JJ., concur.