**IN RE: ROTHSTEIN ROSENFELDT ADLER, PA, Debtor.**

**Case No. 09–34791–BKC–RBR**

United States Bankruptcy
Court, S.D. Florida.
Broward Division

October 30, 2013

Jordi Guso, Esq., Miami, FL, for Debtor.

Chapter 11

## MEMORANDUM ORDER GRANTING, IN PART, MOTION TO ENFORCE CHARGING LIEN AGAINST THE SOCHET ENTITIES [D.E. 5141]

Raymond B. Ray, Judge, United States Bankruptcy Court

THIS MATTER came before the Court for an evidentiary hearing on September 27 and October 7, 2013, upon the Motion to Enforce Charging Lien Against the Sochet Entities [D.E.] (the "Motion to Enforce"), the Response [D.E. 5174], the Reply [D.E. 5180], and the Sur-Reply [D.E. 5247]. Conrad & Scherer, LLP ("C & S") and Kozyak Tropin & Throckmorton, P.A. ("KT & T") (collectively, the "Firms") are

seeking to enforce a charging lien against the gross amount of any future distributions in this bankruptcy case to Ira Sochet as Trustee of the Ira Sochet Trust a/k/a the Ira Sochet Inter Vivos Revocable Trust and Investors Risk Advantage, L.P. (collectively, the "Sochet Entities").

The Court has considered the evidence introduced by the parties at hearing, including: the Firms' Exhibits 1–13, 15–16, 19, 23–29, 31, 38–41, 43–45, 47, 51 and 52 [D.E. 5351][1]; the Sochet Entities' Exhibits A–Q [D.E. 5348]; the sworn declarations and testimony of William Scherer, Harley Tropin, Reid Cocalis, Lawrence Gordich, Michael Goldberg (the Liquidating Trustee), and Ira Sochet; as well as the deposition testimony of Mr. Sochet.[2]

After having considered all of the relevant papers, the court file, the evidence presented, and argument of counsel, the Court determines that it is appropriate to enforce the Retainer Agreement between Conrad & Scherer, LLP, Segall Gordich, P.A. ("SG"), and the Sochet Entities as modified by the subsequent mediated settlement agreement. C & S and SG are entitled to the imposition and enforcement of a charging lien for 30% of all gross distributions to the Sochet Entities that are forthcoming in this bankruptcy case.

### FINDINGS OF FACT

On or about July 11, 2010,[3] the Sochet Entities executed a Retainer Agreement [Firms' Ex. 1] engaging C & S and SG as their counsel in this bankruptcy proceeding and the pending state court litigation,

---

1. All of the Firm's Exhibits that were tendered as evidence, except Exhibit 19, were admitted without opposition. The Sochet Entities' relevance objection to Exhibit 19 was overruled.

2. The deposition testimony was introduced pursuant to Fed.R.Civ.P. 32 and Fed.R.Evid. 801(d)(2).

3. The handwritten date on the Retainer Agreement is illegible. However, credible testimony was presented that the Retainer Agreement was executed on July 11, 2010.

involving the Razorback Plaintiffs, TD Bank, and other defendants (the "Razorback Litigation") in order to pursue funds misappropriated by Scott Rothstein in his operation of a Ponzi Scheme (the "RRA Ponzi Scheme"). The Retainer Agreement specifically provides that the Sochet Entities will pay to C & S and SG a contingent fee of 35% on the first $20 million in recoveries, and 30% on all recoveries exceeding $20 million. *Id.* ¶ 3. The contingent fee was broadly defined to include all gross proceeds the Sochet Entities received from any legal proceeding, both state and federal, for any recovery related to the RRA Ponzi Scheme. The Retainer Agreement states, " 'Gross proceeds' shall be defined as any gross recovery before any deductions for costs or expenses or any other matters/sums deducted from the proceeds." *Id.* The Retainer Agreement further explained: "[t]hese *payments, distributions, and recoveries would include, but not be limited to, bankruptcy distributions and recoveries,* forfeiture or other distributions and recoveries from any and all of the assets seized or recovered, settlements of any kind or nature, and any other payment, distribution, and recovery ..." *Id.* (emphasis added).

Based on the plain language of the contract entered into by the Sochet Entities, C & S, and SG, it is clear that the parties intended the contingent fee to broadly encompass all bankruptcy distributions, in addition to any settlements and state court recoveries. When the parties entered into the Retainer Agreement, the parties did not know which litigation effort, whether in the RRA bankruptcy case, the Razorback Litigation, or the governmental forfeiture action, would result in tangible re-

coveries for the Sochet Entities. C & S purposefully drafted the language in the Retainer Agreement broadly in order to account for the multiple potential sources for recovery and the uncertainty regarding which one would result in monetary gain.

The Retainer Agreement expressly contemplated the division of labor and attorneys' fees between C & S and SG in their concurrent representation of the Sochet Entities. C & S and SG agreed to split the contingent fee arising from the Sochet Entities' recoveries from all sources; C & S would receive 65% and SG would receive 35% of all fees collected. *Id.* ¶ 8. On May 22, 2012, the Firms and SG reached a mediated agreement in which SG agreed to reduce its percentage of the contingent fee to 30% for any future recoveries on behalf of the Sochet Entities. [Firms' Ex. 16].

On August 17, 2010, C & S entered into a Co–Counsel Agreement with KT & T in connection with the Razorback Litigation and RRA bankruptcy proceeding. [Firms' Ex. 2]. On October 1, 2010, C & S sent a letter advising the Sochet Entities of this, as well as the addition of more plaintiffs to the Razorback Litigation. [Firms' Ex. 6]. The Sochet Entities never signed the Acknowledgement and Consent section of the letter. *Id.* at 5. There is no evidence in the record before the Court that the Sochet Entities formally engaged KT & T to represent them. Although Mr. Tropin testified as to the effort that he expended on the Sochet Entities' behalf, there was no written acknowledgement that the Sochet Entities and KT & T formed an attorney-client relationship; rather, it appears that Mr. Sochet purposefully decided not to separately engage KT & T as counsel.[4]

---

4. Mr. Scherer testified that he unsuccessfully tried to get Mr. Sochet to sign a retainer agreement with KT & T on many occasions. Also, Mr. Scherer's presentation to the Sochet

Entities in February 2013 advising Mr. Sochet that it was "Time to Bring KTT Aboard" highlighted this fact. [Firms' Ex. 39 at 16].

In February 2013, Mr. Scherer and Mr. Cocalis met with Mr. Sochet regarding the RRA Trustee's Motions for Reconsideration of the Order Allowing the Sochet Entities' Claim [D.E. 3603, 3604] (the "Trustee's Motions to Reconsider"). Mr. Scherer testified that he explained to Mr. Sochet verbally and through demonstration of a printed powerpoint presentation [Firms' Ex.] the gross amount that Mr. Sochet would need to recover in the bankruptcy proceeding in order to be made whole, which included the Sochet Entities 30% contingent fee on any bankruptcy distributions. [D.E. 5309–1 ¶ 92]. Mr. Scherer further testified that Mr. Sochet never objected to this statement or asserted that he would not owe this contingent fee on such distributions. Moreover, Mr. Sochet admitted in his deposition that, pursuant to the Retainer Agreement, the Sochet Entities would owe a contingent fee to C & S for any bankruptcy distributions.

On or about April 28, 2013, Mr. Sochet sent an email advising his counsel that he decided to have the Firms represent him as lead counsel for the evidentiary hearing on the Trustee's Motions to Reconsider. [Firms' Ex. 23]. In the letter, Mr. Sochet specifically indicated that the representation would be governed by the July 2010 Retainer Agreement, and that the Firms would not be entitled to any additional compensation for this further representation. *Id.* Mr. Sochet's expectation that the Sochet Entities' legal representation at this highly contested evidentiary hearing would be covered by the previously negotiated contingent fee arrangement demonstrated that he knew that the Sochet Entities were obligated to pay C & S a contingent fee on all bankruptcy recoveries and distributions, pursuant to the Retainer Agreement.

On April 30, 2013, C & S filed a Notice of Appearance on behalf of the Sochet Entities with KT & T listed as co-counsel. [D.E. 4350]. On or about May 11, 2013, without the knowledge or assistance of the Firms, the Sochet Entities entered into a settlement of the Trustee's Motions to Reconsider, which provided for the allowance of their claims in the amount of $20 million. This settlement was conditioned upon confirmation of the Trustee and Unsecured Creditor Committee's Second Amended Joint Plan of Liquidation [D.E. 4392] or any subsequent modified plans [D.E. 4517] (the "Plan"). The Sochet Entities, which were previously a part of the faction opposing confirmation of the Plan, then decided to support abatement the pending Motion to Convert [D.E. 4085]. Shortly after this conflict of interest arose, on May 13, 2013, the C & S and co-counsel KT & T withdrew from their bankruptcy representation of the Sochet Entities. [D.E. 4428]. Subsequently, SG resumed representing the Sochet Entities in all bankruptcy matters. [D.E. 4512]. C & S continues to represent the Sochet Entities in connection with ongoing Razorback Litigation. In July 2013, the Plan was confirmed [D.E. 5063] and projects to pay a 100% distribution for general unsecured claims, including the $20 million claim of the Sochet Entities.

### CONCLUSIONS OF LAW

There are two issues presently before the Court. First, whether C & S is entitled to a charging lien on the proceeds of the forthcoming bankruptcy distributions to the Sochet Entities. Second, whether the Sochet Entities' argument that C & S is attempting to collect fees on fees precludes this Court from imposing a charging lien.[5]

---

5. The Sochet Entities filed a Notice of Intention to Limit Argument [D.E. 5280] stating

■ Under Florida common law, charging liens provide an "equitable right to have the costs and fees due the attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It was created to protect the rights of the attorney." *Worley v. Phillips*, 264 So.2d 42, 43 (Fla.Dist.Ct.App. 1972). A valid charging lien is created when the following elements are satisfied: (1) there is a contract between the attorney and the client; (2) there is an understanding, express or implied, between the parties that the payment is either dependent upon recovery or will come from the recovery; and (3) there has been an attempt to avoid the payment of fees or a dispute as to the amount. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383, 1385 (Fla.1983); *see also In re MacNeal*, 393 B.R. 805, 810–11 (Bankr.S.D.Fla.2008) (analyzing the creation and perfection of a charging lien applying Florida law in a bankruptcy proceeding). Timely notice is the only requirement to perfecting a charging lien. *US Acquisition, LLC v. Tabas, Freedman, Soloff, Miller & Brown, P.A.*, 87 So.3d 1229, 1231 (Fla.Dist.Ct.App. 2012).

■ The Court concludes that the conditions for the imposition and perfection of a charging lien have been satisfied. There was an agreement between C & S, SG, and the Sochet Entities for legal services as evidenced by the Retainer Agreement. That contract provides that the Sochet Entities are required to pay a contingent fee to C & S and SG on any recovery realized in connection with the RRA Ponzi Scheme, specifically including any bankruptcy distributions. This provided an express understanding that the payment of attorneys' fees was required upon any recovery on behalf of the Sochet Entities. There is currently a dispute as to whether the Sochet Entities are required to pay that contingent fee, as demonstrated by the necessity of this opinion. On July 26, 2013, the Firms gave timely notice to the Sochet Entities as shown by the Notice of Charging Lien [D.E. 5116], which was filed while this bankruptcy proceeding was open and prior to any initial distribution being made to the Sochet Entities. The Court will enforce the Retainer Agreement as written and according to the intent of the parties. C & S and SG jointly have a valid charging lien as to the contingent fee owed, which has been properly perfected and fully attaches to any forthcoming bankruptcy distribution.

■ The Sochet Entities' primary defense does not preclude enforcement of the charging lien. The Sochet Entities contend that a charging lien should not be imposed because the Firms seek "contingent fees on contingent fees". Since C & S was paid a contingent fee on previous recoveries, the Sochet Entities allege that they should not be forced to pay an additional fee on the $20 million claim in this bankruptcy proceeding because it represents a partial reimbursement of the attorneys' fees expended in the previous litigation. The Sochet Entities have failed to cite any authority as to why such a fee would be impermissible under applicable state law or the Retainer Agreement. In fact, such a fee arrangement is not prohibited under Florida law. *See Olmstead v. Emmanuel*, 783 So.2d 1122, 1128–29 (Fla. Dist.Ct.App.2001). A court must look to

they only wished to defend the Motion to Enforce with the argument that the Firms are impermissibly seeking to collect fees on fees, but that they were not waiving or abandoning any other arguments. The Court will address the primary defense that the Sochet Entities presented at the evidentiary hearing. Additionally, the Court finds that all other arguments against enforcing the Retainer Agreement were meritless.

the retainer agreement, and if it is permissible under the Rules Regulating the Florida Bar, then charging a contingent fee on separately awarded attorney's fees, such as statutory fees, is acceptable. *Id.* The Retainer Agreement requires the payment of a contingent fee on all "gross proceeds" received by the Sochet Entities in connection with the RRA Ponzi Scheme, and makes no distinction as to whether those recoveries are for reimbursement of attorneys' fees paid by the Sochet Entities. Since there is no prohibition on receiving a contingent fee on recoveries that are based on attorneys' fees, and the parties bargained for such a result, this Court will enforce it.

Pursuant to the Retainer Agreement, the Sochet Entities are not contractually bound to directly pay KT & T any portion of the contingent fee. The Retainer Agreement only references C & S and SG as counsel to the Sochet Entities. Nothing in the record before the Court shows that

the Sochet Entities formally engaged KT & T as counsel. Therefore, this Court will not impose a charging lien as to KT & T.[6]

## CONCLUSION

Accordingly, it is

**ORDERED** that the Motion [D.E. 5141] is **GRANTED**, in part. A charging lien is imposed in favor of C & S and SG on 30% of the gross amount of any distributions to be made to the Sochet Entities in this bankruptcy case. When any future distribution is made to the Sochet Entities, the Liquidating Trustee is directed to disburse 30% of the gross proceeds of the distribution to C & S and SG.

---

**6.** The issue of whether C & S may choose to honor its Co–Counsel Agreement with KT & T and split their percentage of the fee with KT & T upon distribution of the funds is not a matter that is before the Court.