[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2002
THOMAS K. KAHN
CLERK

No. 01-10863

D. C. Docket No. 98-00159 CV-DHB-1

ELAINE MATTHEWS,

Plaintiff-Appellee-
Cross-Appellant,

versus

COLUMBIA COUNTY,

Defendant-Appellant-
Cross-Appellee,

RICHARD REYNOLDS, et al.,

Defendants.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(June 19, 2002)**

Before EDMONDSON, Chief Judge, HILL and LAY*,  Circuit Judges.
PER CURIAM:

_____

*Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

This case deals with the question of whether a county can be held liable, under Section 1983, when some -- but less than a majority -- of the county's commissioners vote to eliminate a public employee's job for an unconstitutional reason.  We conclude that it cannot.

BACKGROUND

This suit arises out of the elimination of Plaintiff Elaine Matthews's ("Plaintiff") job with Defendant Colombia County ("County").  Plaintiff was employed by the County as Director of Administrative Services.  In 1993, the five-member County Board of Commissioners voted to eliminate several County positions; Plaintiff's job was among those eliminated.  Three County Commissioners -- Richard Reynolds, Diane Ford, and David Titus -- voted in favor of the resolution eliminating Plaintiff's job.  The other two Commissioners either voted against it or were absent from the vote.

Plaintiff claims that the elimination of her job was in retaliation for comments she had made about Renaissance Environmental Corporation, a company with which the County was considering contracting.  She claims that the elimination of her job therefore violates the First Amendment.  Plaintiff sued the

2

County, Commissioners Reynolds, Ford, and Titus, and County Administrator Stephen Szablewski; the people were sued in both their official and individual capacities. A motion to dismiss the suit against Reynolds, Ford, and Titus in their official capacities was granted.

Later, Plaintiff filed, in Georgia state court, a Georgia RICO action against the individual defendants and against Renaissance and two of its agents: Jeffrey Nolan and Rick Byrd. This RICO action was removed to federal court and consolidated with the First Amendment claim.

Except for the First Amendment claim against the County, all of Matthews's claims were dismissed at various stages. Before trial, the district court granted the defendants' motion to dismiss the state RICO claim. And, after the trial had started, the district court granted Reynolds, Ford, Titus, and Szablewski's motions for summary judgment on the claims against them in their individual capacities. The district court ruled that Reynolds, Ford, and Titus were protected by legislative immunity and that Szablewski was protected by qualified immunity.

Plaintiff's claim against the County was tried to a jury, who returned a verdict in favor of Plaintiff. In a special verdict, the jury found that only one Commissioner -- Commissioner Reynolds -- was motivated by Plaintiff's "protected speech activity" in voting to eliminate Plaintiff's position. But the jury

3

also found that Titus and Ford had been "influenced in [their] vote[s] by another Commissioner who was motivated to eliminate Plaintiff's employment because of the Plaintiff's protected speech activity[.]"[1] After the verdict was announced, the County moved for judgment as a matter of law under Fed. R. Civ. P. 50. The district court denied the motion. The County also moved to set aside the jury's award of emotional and mental distress damages. That motion, also, was denied.

Both parties appeal. The County appeals the district court's denial of judgment as a matter of law on the claim against it and the district court's refusal to set aside the jury's emotional damages award. Plaintiff cross-appeals, challenging the district court's resolutions of the suits against the County officials in their individual capacities and the RICO claim. We reverse the district court's denial of the County's motion for judgment as a matter of law, and affirm on all issues raised in Plaintiff's cross-appeal.

DISCUSSION

---

[1]The district court submitted two verdict forms to the jury in this case. The second form -- which included the two special interrogatories discussed above -- was submitted after the jury had issued a general verdict in Plaintiff's favor. On appeal, Plaintiff argues that it was error to submit the second form to the jury. But, at trial, Plaintiff told the district court that she did not object to the submission of the second form. Plaintiff cannot now complain about a jury instruction that she explicitly accepted before the district court. See generally, In re Carbon Dioxide Industry Antitrust Litigation, 229 F.3d 1321, 1327 (11th Cir. 2000) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.").

4

The County advances two arguments against the district court's ruling for Plaintiff: 1) Plaintiff's speech was not protected by the First Amendment; and 2) even if the speech was protected, it is improper to hold the County liable based on the improper motives of only one commissioner. For the purposes of this appeal, we will assume (without deciding) that Plaintiff's speech is protected by the First Amendment. A district court's denial of a motion for judgment as a matter of law is reviewed *de novo*. See Morro v. City of Birmingham, 117 F.3d 508, 513 (11th Cir. 1997). We conclude that holding the County itself liable was error.

The determination of county liability in this case is somewhat complicated by the fact that the unlawfulness of the County's act is not apparent: reductions in force are a perfectly proper way for a government to get its finances in order. Instead, the unlawfulness can only be assessed by looking at the motives of those who enacted the reduction in force ("RIF"). See Scott-Harris v. City of Fall River, 134 F.3d 427, 437 (1st Cir. 1997) ("In cases like this one, implicating the exercise of First Amendment rights, liability under Section 1983 can attach to the passage of a facially benign law only if one peers beneath the textual facade and concludes that the legislative body acted out of a constitutionally impermissible motive."), rev'd on other grounds sub nom. Bogan v. Scott-Harris, 118 S. Ct. 966 (1998). In

5

this case, the jury found that Commissioner Reynolds did act with unconstitutional motive. But this determination does not settle the question of the County's liability.

That a local government "may only be held liable under Section 1983 if 'action pursuant to official . . . policy of some nature caused a constitutional tort'" is well-settled law. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (quoting Jett v. Dallas Indep. Sch. Dist., 109 S. Ct. 2702, 2719 (1989)). And, "[o]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." Id. (quoting City of St. Louis v. Praprotnik, 108 S. Ct. 915, 924 (1988) (plurality opinion)). In this case, Commissioner Reynolds does not possess final policymaking authority by himself; that authority rests with the entire Board of Commissioners.

Because policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an unconstitutional motive. An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole. Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001) (granting summary judgment to municipality where plaintiff had only shown evidence that one member of a three-member majority had voted to fire

6

plaintiff for a discriminatory reason); cf. Church, 30 F.3d at 1343 (concluding that comments of one city councilman suggesting an unconstitutional motive was insufficient to show that the city council had authorized an unconstitutional policy).

Plaintiff attempts to get around Mason by arguing that Reynolds's unconstitutional motive can be imputed to the board as a whole because Commissioners Ford and Titus either ratified Reynolds's unconstitutional motive or delegated final policymaking authority to him. See Praprotnik, 108 S. Ct. at 925-26. In support of these theories, Plaintiff points to these things: 1) the jury's finding that Commissioners Ford and Titus were "influenced" by Commissioner Reynolds in voting for the termination of Plaintiff; 2) evidence that Commissioners Ford and Titus knew of Commissioner Reynolds's improper motive; 3) evidence that Reynolds, Ford, and Titus often voted as a bloc, and 4) evidence that Reynolds was the one who selected which County positions would be included in the layoff. Plaintiff's argument lacks merit; these considerations do not change the outcome of this case.

A delegation theory of county liability does not apply here. Local government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the

7

decision is not subject to review by the policymaking authority.  See Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).  Here, even if Reynolds was given the power to select which positions would be eliminated in the RIF, his selections still had to be accepted by a majority of the board.  As such, Reynolds never possessed final policymaking power himself; and the delegation doctrine does not apply.

Nor does the doctrine of ratification apply.  County liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.  See generally, Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 998 (11th Cir. 1990).  The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it.  Gattis v. Brice, 136 F.3d 724, 727 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it*.'") (emphasis in original) (quoting Praprotnik, 108 S. Ct. at 926).

That Titus and Ford may have known about the unconstitutional basis of Reynolds's selection and vote or that Reynolds may have affected Titus and Ford's votes by his influence is not enough to show that they ratified the unlawful basis by

8

also voting for the RIF.   In reaching this conclusion, we draw not only upon our precedent, but also upon our belief that a contrary rule would put lawmakers in an unacceptable position.  Lawmakers' support for legislation can come from a variety of sources; one commissioner may support a particular piece of legislation for a blatantly unconstitutional reason, while another may support the same legislation for perfectly legitimate reasons.  A well-intentioned lawmaker who votes for the legislation -- even when he votes in the knowledge that others are voting for it for an unconstitutional reason and even when his unconstitutionally motivated colleague influences his vote -- does not automatically ratify or endorse the unconstitutional motive.[2]  If we adopt the rule suggested by Plaintiff, the well-intentioned lawmaker in this hypothetical would be forced either to vote against his own view of what is best for his county or to subject his county to Section 1983 liability.  We think the law compels no such outcome.

We conclude, therefore, that, because only Commissioner Reynolds was actually motivated by an unconstitutional consideration, the County cannot be held liable under Section 1983.  Mason, 240 F.3d at 1340 ("[T]here can be no municipal liability unless all three members of the council who voted against reappointing

---

[2]We think this proposition is true even where -- as Plaintiff argues is the case here -- the properly motivated lawmaker has often voted the same way as the improperly motivated lawmaker.

9

[p]laintiff *shared the illegal motive*.") (emphasis added).  The judgment of the district court on this issue must be reversed.

Therefore, we need not reach the damages issue raised by the County.  And, we see no merit to Plaintiff's cross-appeals of the district court's resolution of the claims against the individual defendants or of the state RICO claim.  We therefore affirm the district court on the rulings Plaintiff challenges on cross-appeal.

We remand this case to the district court, with instructions to enter judgment in favor of the County.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.