[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11653
Non-Argument Calendar

_____

D. C. Docket No. 04-00105-CV-T-24MSS

SUSAN R. KAMENSKY,

Plaintiff-Appellant,

versus

ROGELIO DEAN,
HILLSBOROUGH COUNTY, FLORIDA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 14, 2005)

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Susan R. Kamensky appeals the district court's grant of summary judgment on her 42 U.S.C. § 1983 claims against Hillsborough County, Florida, and Rogelio Dean, her former employer and supervisor, respectively, whom she alleged retaliated against her for exercising her First Amendment right to freedom of speech. After de novo review, we conclude the district court did not err and affirm.[1]

Kamensky alleged she was terminated because she expressed concerns about the propriety of a trip to Boston to view a proposed vendor's facilities. Kamensky asserts the district court erred in: (1) overlooking evidence showing any review of Dean's decision to reclassify her position and ultimately terminate her was merely a "rubber stamp," thus permitting a reasonable factfinder to impose liability on Hillsborough County and on Dean, in his individual capacity; and (2) determining there was insufficient evidence to create a jury question as to whether her speech played a substantial part in her termination.

---

[1] We review de novo the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994).

## I. DISCUSSION

A. *Rubber stamp argument*

    1. *Dean*

A "decisionmaker" is someone "who has the power to make official decisions and, thus, be held *individually* liable." *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003) (emphasis in original). A "decisionmaker" may often be identified by a rule or by examining the statutory authority of the official alleged to have made the decision. *Id.* at 1328. In the termination context, a "decisionmaker" has the power to terminate an employee, not merely the power to recommend termination. *Id.*

Kamensky concedes Dean's reorganization proposal had to be reviewed by the County's Human Resources Director, the Assistant County Administrator, the County Civil Service Board (County Board), and Dan Kleman, the County Administrator. She further concedes county policy and procedure deemed Kleman the decisionmaker regarding the elimination of Kamensky's position. Thus, the evidence indisputably shows Dean had no power to terminate Kamensky, but rather only had the power to recommend her termination. Dean was not the "official decisionmaker," and thus cannot be held individually liable. *See id.*

3

Nonetheless, Kamensky asks us to create a "rubber stamp" exception to *Quinn's* "decisionmaker" inquiry. In doing so, she cites cases dealing with governmental, not individual, liability. *See Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1290–94 (11th Cir. 2004); *Matthews v. Columbia County*, 294 F.3d 1294, 1296–98 (11th Cir. 2002). We have not extended this line of cases to individual liability, and refrain from doing so here.

2. *Hillsborough County*

In *Quinn*, we noted the distinction between a "decisionmaker," as discussed above, and a "policymaker," "who takes actions that may cause the [governmental entity] to be held liable for a custom or policy." *Quinn*, 330 F.3d at 1326. Such an inquiry exists because governmental entities cannot be held liable under § 1983 on a theory of *respondeat superior*, but rather may be held liable only for the execution of a governmental policy or custom. *Id.* at 1325. This liability "may arise with regards to an employment decision, such as a termination, provided that the decisionmaker 'possesses *final authority* to establish . . . *policy* with respect to the action ordered.'" *Id.* (emphasis in original) (citation omitted). "Only those . . . officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *Matthews*, 294 F.3d at 1297.

A governmental employee is considered a "final policymaker" for governmental liability purposes "only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the . . . employee's decision." *Holloman*, 370 F.3d at 1292 (internal citation omitted). "To determine if someone is a final policy maker, we look not only to 'state and local positive law,' but also to 'custom and usage having the force of law.'" *Id.* (citations omitted).

The evidence demonstrated Dean, by definition, was not the "final policymaker" over Kamensky's termination. Dean's reorganization plan had no legal effect without further action by Kleman, and Kleman had the power to reject Dean's plan. *See id.* Kamensky, however, asserts Kleman merely "rubber stamped" Dean's recommendation, and that, absent meaningful review, the County may be held liable.

In *Quinn*, we cited a Fifth Circuit case for the proposition a final policymaker may serve as the conduit of a subordinate's improper motive if he merely "rubber stamps" the subordinate's recommendation. *Quinn*, 330 F.3d at 1327 (citation omitted). In *Quinn*, however, we noted the plaintiff neither pointed to a cognizable defect in the proceedings, nor provided evidence the reviewing board approved any improper motive. *Id.* at 1326. More recently, we looked "to

5

whether there is an actual '*opportunity*' for 'meaningful' review" in determining whether a governmental decisionmaker is a final policymaker. *Holloman*, 370 F.3d at 1292 (emphasis added). In *Holloman*, we found no *opportunity* for a meaningful review by a school board in light of the practical difficulties of administering a multi-step appellate process. *Id.* at 1293 (emphasis added).

Here, as in *Quinn*, Kamensky does not point to any cognizable defect in the proceedings, nor does she provide evidence Kleman, or anyone else, approved an improper motive. And, unlike in *Holloman*, in this case, there was an opportunity for meaningful review. Indeed, Kleman testified that, when he approved Dean's reorganization plan, he was aware of the reorganization plan and its proposed adverse affects on Kamensky's position. Thus, Kamensky failed to introduce sufficient evidence to show Dean was the "final policymaker" regarding her termination. *See Quinn*, 330 F.3d at 1326.

B.    *Insufficient evidence for jury question*

For a public employee to sustain a retaliation claim for protected speech under the First Amendment, the employee must show, by a preponderance of the evidence: (1) her speech is on a matter of public concern; (2) her free speech interest outweighed her employer's interest in promoting efficient public services; and (3) her speech played a "substantial part" in the employer's decision to

6

discharge her. *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1219 (11th Cir. 2001). The County concedes the first two factors, but disputes the third factor. As to that factor, this Court has stated "'it is neither possible nor desirable to fashion a single standard for determining when an employee has met her initial burden of demonstrating that a retaliatory intent was a 'substantial' or 'motivating factor' behind a government employment decision.'" *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1291 (11th Cir. 2000) (citation omitted). Rather, a court must examine the record as a whole to ascertain whether the plaintiff presented sufficient evidence for a reasonable jury to conclude her protected speech was a substantial motivating factor in the decision to terminate her. *Id.* "The plaintiff's burden in this regard is not a heavy one." *Id.*

In *Stanley*, this Court identified several relevant factors to consider, including: (1) the temporal proximity between the termination and the protected activity; (2) whether any reasons for the termination were pretextual; (3) whether any comments made, or actions taken, by the employer indicate the discharge was related to the protected speech; (4) whether the asserted reason for the discharge varied; and (5) any circumstantial evidence of causation, including such facts as who initiated any internal investigations or termination proceedings, whether there is evidence of management hostility to the speech in question, or whether the

7

employer had a motive to retaliate. *Id.* at 1291 n.20. "There is no one factor that is outcome determinative, but all factors must be taken into account." *Id.*

As to temporal proximity, we have inferred causation "[w]here termination closely follows protected activity." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11th Cir. 1996). However, we have rejected any per se rule as to the length of time necessary to create such an inference. *See Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1566–67 (11th Cir. 1995). In *Stanley*, 219 F.3d at 1291–92, we refused to grant such an inference where there was almost a four-year gap between the protected speech and the employee's termination.

There was a one-year gap between Kamensky's protected speech and Dean's initial staff analysis, an eighteen-month gap between her protected speech and his initial reorganization proposal, and over a two-year gap between her protected speech and her ultimate termination. As in *Stanley*, Kamensky cannot show an inference of causation from temporal proximity.

As to pretext, Dean offered one primary reason for Kamensky's termination, the reorganization of the ITS department, but also referred to a second reason, her poor performance. Kamensky offered no evidence to demonstrate these reasons were pretextual. Rather, uncontroverted evidence indicated Dean presented his reorganization plan based on a staff analysis he performed after receiving an

8

operational analysis from an outside firm. Moreover, Dean testified as to Kamensky's unsatisfactory performance, and Kamensky admitted she had performance problems.

As to the other *Stanley* factors, Kamensky offered no evidence any comments were made, by anyone, indicating her termination was related to her protected speech, and Dean expressly denied he made any such comments. As to specific actions, Kamensky testified Dean reduced her responsibilities and gave her a substandard evaluation after she expressed concerns about the Boston trip. However, Kamensky also admitted that, prior to and during this time, her work performance suffered.

Moreover, Kamensky did not offer any evidence Dean confronted her about her protected speech, failed to notify her of his reorganization plan, failed to follow departmental policy, reprimanded her, or singled her out in his plan. Rather, Dean testified he followed departmental policy, notified her of his plan, advised her to apply for a new position, would have hired her had she applied, and recommended reclassification of another employee's, Deborah Scarborough's, position in his plan. Kamensky also failed to introduce any evidence Dean's asserted reasons for her termination ever varied.

Lastly, Kamensky failed to introduce sufficient circumstantial evidence of causation. Although it is undisputed Dean initiated the reorganization plan ultimately leading to Kamensky's termination, Kamensky offered no evidence these actions had anything to do with her speech. More importantly, Kamensky offered no evidence of management hostility towards her speech, nor did she provide any evidence Dean had a motive to retaliate against her. For instance, she offered no evidence Dean came under scrutiny or otherwise suffered because of her protected speech. We conclude Kamensky has failed to show her speech was a motivating factor in her termination.

## II. CONCLUSION

We find no merit to Kamensky's "rubber stamp" argument. Additionally, the district court did not err in determining there was insufficient evidence to create a jury question as to whether Kamensky's speech played a substantial part in her termination. Thus, we affirm the district court's grant of summary judgment to Hillsborough County and Dean.

AFFIRMED.

10