[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**September 19, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-12747
Non-Argument Calendar

_____

D. C. Docket No. 03-00178-CV-1

KEVEN J. MACK,

Plaintiff-Appellant,

versus

AUGUSTA-RICHMOND COUNTY, GEORGIA,
ADMINISTRATOR GEORGE KOLB,
in his Individual and Official Capacity,

Defendants-Appellees,

LEE BEARD, in his Individual and Official Capacity,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 19, 2005)**

Before BIRCH, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Appellant, Keven Mack, appeals the district court's grant of summary judgment in favor of Appellees, Augusta-Richmond County and George Kolb, in his action alleging, *inter alia*, that Appellees terminated him in violation of the False Claims Act ("FCA") providing protection to whistle blowers, 31 U.S.C. § 3729, *et seq.*[1]  For the following reasons, we affirm the district court's judgment.

## I. BACKGROUND

Appellant worked for the consolidated government of Augusta-Richmond County ("Augusta") as the Director of Housing and Neighborhood Development. His job duties included overseeing Augusta's disbursement of federal grant money from the United States Department of Housing and Urban Development ("HUD") through the Community Development Block Grant program ("CDBG").[2] Appellant's duty to oversee these disbursements required efficient management and ensuring compliance with the applicable regulations.

---

[1]Appellees make reference to Appellant's claim made to the district court under 42 U.S.C. § 1983 alleging his termination violated his right to free speech.  However, Appellant makes no argument under § 1983 in his brief on appeal; thus, while referenced in his Civil Appeal Statement, the argument is waived.  *See, e.g., Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

[2]Sometime around the date of Appellant's hire and continuing beyond his employment, Augusta was audited by HUD and faced problems with HUD compliance.

Sometime in 2000, Augusta named the East Augusta Community Development Corporation ("East Augusta") as a Community Development Housing Organization ("CDHO"), which are development partners eligible for HUD funds through the CDBG program. Augusta entered into a contract with East Augusta to oversee the rehabilitation of the Lincoln Square Apartments in Augusta. Under the contract, East Augusta would act as sub-recipient of CDBG funds provided to Augusta by HUD. East Augusta's use of CDBG funds was subject to the HUD regulations and guidelines. Failure to comply with the applicable HUD guidelines and bidding procedures could result in Augusta being required to remit all funds disbursed under the CDBG. East Augusta pulled in a partner, Capital Development Corporation, to help East Augusta remain compliant with the HUD guidelines.

East Augusta sought a contractor for the Lincoln Square project. However, at a meeting to discuss the bidding procedures required to comply with the HUD guidelines, employees of Appellant's department learned that East Augusta had already entered into a contract with Gold Mech, Inc. ("Gold Mech")[3] for the Lincoln Square project without soliciting competitive bids as the HUD regulations

---

[3]It is unclear what the proper designation is for this entity as it is referred to as GoldMech, Inc., Gold Mech, Corp. and Gold Mech, Inc. in the record.

require. Following this meeting, at Appellant's request, an employee in Appellant's department contacted HUD to obtain an opinion about this procurement. HUD issued a memorandum opining that Capital Development Corporation violated the HUD regulations by not utilizing a competitive bidding process. In subsequent months, Augusta Commissioners and Augusta's attorney Jim Wall ("Wall") became involved and Augusta continued to work with HUD to resolve the problem.

In September 2001, Appellant, several Augusta Commissioners, Wall and other employees had a meeting with Stella Taylor of HUD to discuss the Lincoln Square project. During the meeting, Augusta and HUD agreed to carve out three items of the construction contract to rebid according to HUD regulations. Invitations for bids were sent out, including an invitation to Gold Mech, whose bid was significantly lower that the next low bidders. After Appellant learned of Gold Mech's participation in the bidding, he called HUD and it appears later sent an e-mail to Wall requesting a meeting to discuss the procurement issue before awarding contracts on the rebids. However, Gold Mech had already been awarded the contracts. Another employee in Appellant's department, John Kemp, contacted HUD regarding the rebids and Kemp sent Appellant an e-mail expressing his concern about the rebids and noncompliance with the HUD

4

guidelines.  Appellant forwarded the e-mail to Wall and copied it to his supervisor the City Administrator, George Kolb ("Kolb").  Wall responded, disagreeing with Kemp's assessment and indicated that he had spoken with Stella Taylor of HUD to confirm that there was no problem with Gold Mech participating in the rebid.  Wall also stated that he would "appreciate [Appellant] not calling HUD for a second opinion on issues which you ask me to address–this merely complicates the whole process."

Subsequently, Kolb asked for Appellant's resignation and presented him with a severance package and informed Appellant that his termination would follow if he did not resign.  Kolb allegedly responded to Appellant's questions as to why he was being terminated that he did not like Appellant bringing up the fact that Gold Mech had rebid.  Almost a month later, at a regular meeting of the Augusta Commission, Kolb recommended to the Commission that Appellant's employment be terminated.  The Commission meeting minutes reflect that Kolb recommended termination, stating only: "I have lost confidence in [Appellant's] ability to lead the Housing and Neighborhood Department effectively."  On the day of the commission meeting, Appellant's attorney faxed a letter to Wall asking that the letter be presented to the Commission prior to the vote.  The letter stated that Kolb ignored Appellant's accomplishments and simply criticized him about

5

the Lincoln Square project and accused Kolb and the Commission of acting to terminate Appellant "for protecting the public's trust." The Commission voted seven-to-one to terminate Appellant. In his deposition Kolb gave several reasons for recommending Appellant's termination, including lack of sufficient management skills and inability to make decisions without outside assistance. The Commissioners filed affidavits stating that they voted to terminate based upon Kolb's recommendation.

Plaintiff subsequently filed a complaint alleging violations of the False Claims Act, 31 U.S.C. 3129 *et seq.*, *inter alia*, contending he was terminated in retaliation for raising concerns and questions about Gold Mech's participation in the rebid process.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, *Jones v. City of Columbus*, 120 F.3d 248, 251 (11th Cir. 1997), viewing the facts in the light most favorable to the nonmovant, *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1142 (11th Cir. 1996).

## III. DISCUSSION

Appellant argues that his termination was an act of retaliation violating the FCA, 31 U.S.C. § 3729 *et seq*. Pursuant to § 3730(h) "whistle blower" protection is provided for an employee

> who is discharged . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Protection under this provision requires a showing that Appellant was engaged in protected conduct and that Appellees retaliated against him because of that protected conduct. *See Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1313 (M.D. Ala. 1999).

Though it is possible Appellant engaged in protected conduct, we need not decide this as Appellant is unable to establish his termination was retaliatory. Appellant was terminated by the Augusta Commission. Assuming Appellant was investigating or acting in furtherance of a fraud report as required for an FCA claim, Appellant is unable to show that the Commission was aware of this conduct. Appellant cannot show that the employer, the Commission, could have reasonably believed Appellant's actions provided a "distinct possibility" that

7

Appellant would file a False Claims Act suit. *See Childree*, 92 F.3d at 1146 (holding that protection under § 3730(h) is available when a false claims action is actually filed or "where the filing of such an action . . . was a 'distinct possibility'"); *see e.g. Maturi v. McLaughlin Research Corp.*, 413 F.3d 166, 172-73 (1st Cir. 2005) (noting that the employer must know of the employee's protected conduct to prevail on an FCA claim). Kolb did not have the power alone to terminate Appellant; instead, the Commission held that ultimate power. For the Commission to have acted in a retaliatory manner, it follows that they must have been aware of and acted as a result of Appellant's allegedly protected conduct. *See Mann,* 49 F. Supp. 2d at 1314. Moreover, even if Appellant could show that Kolb acted in a retaliatory manner, this would be insufficient because ultimate terminating power rested with the Commission, not Kolb alone. *See Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002) (holding that in an § 1983 retaliation action "[a]n unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.")

The record reflects that the Commissioners voted to terminate Appellant based upon Kolb's recommendation and expressed "lack of confidence" in Appellant's ability to continue in his management position effectively. The e-

mails sent between Kolb, Wall and Appellant evidence that Appellant was simply trying to ensure compliance with the HUD regulations not that an FCA action was a "distinct possibility." *See, e.g. Maturi*, 413 F.3d at 173 ("[W]here an employee's job responsibilities involve overseeing government billings or payments, his burden of proving that his employer was on notice that he was engaged in protected conduct should be heightened. Yet, such an employee can put his employer on notice 'by any action which . . . [,regardless of his job duties,] would put the employer on notice that [FCA] litigation is a reasonable possibility.'" (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861,868 (4th Cir. 1999)). Moreover, assuming this was evidence of protected activity, the record does not reflect that these e-mails were brought to the full Commission's attention. Further, there does not appear to be evidence that the letter from Appellant's attorney sent to Wall was brought to the Commission's attention. However, even if the letter was given to the Commissioners, that fact would not provide a reasonable basis from which to conclude that the Commission was on notice of Appellant's "protected activity." The record is void of evidence from which it could be reasonably inferred that the Commission had notice of the distinct possibility that Appellant would file a False Claims Act and that his termination was in retaliation for such conduct.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's well-reasoned judgment, 365 F. Supp. 2d 1362 (S.D. Ga.  2005), granting Appellees' Motion for Summary Judgment.

**AFFIRMED.**