[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11562
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 20, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-03107-CV-AR-M

EDDIE L. TUCKER,

Plaintiff-Appellee-
Cross-Appellant-

versus

TALLADEGA CITY SCHOOLS,

Defendant-
Cross-Appellee,

LEONARD MESSER,
in his individual capacity and in his capacity
as Superintendent,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(March 20, 2006)**

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

After Eddie Tucker was terminated as Coordinator of the Continuous Learning Center (CLC) within the Talladega City School system, he brought this action against the Talladega City School District and Lee Messer, the superintendent of that school district, alleging violations of Title VII, 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment to superintendent Messer on the Title VII and § 1981 claims, but the court denied summary judgment on the § 1983 claim, finding that Messer was not entitled to the defense of qualified immunity. The district court also granted partial summary judgment to the School District on the § 1981 and § 1983 claims. Therefore, the only claims that remain for trial are Tucker's Title VII claim against the School District and his § 1983 claim against Messer.

The district court determined that under Fed. R. Civ. P. 54(b) there was no just reason for delay and directed entry of final judgment as to the claims for which summary judgment in favor of the defendants had been entered. Messer brings this interlocutory appeal from the denial of qualified immunity on the § 1983 claim against him. Tucker cross-appeals the granting of summary judgment to Messer on the § 1981 claim and to the School District on the § 1981 and § 1983 claims.

2

## I.

We will first address the district court's denial of qualified immunity to defendant Lee Messer on the § 1983 claim. A public defendant acting within his discretionary authority is entitled to qualified immunity unless that official violated a right of the plaintiff's that was clearly established. Cook v. Gwinnett County School District, 414 F.3d 1313, 1315 (11th Cir. 2005). The district court held that a reasonable jury could find that the First Amendment protected Tucker's speech and that there was a causal connection between the speech or Tucker's EEOC activity and his termination, so that his termination was a violation of his First Amendment rights. The court also held that the law was clearly established because, assuming that Messer knew that he was retaliating against Tucker for his public comments, no reasonable Superintendent could have thought that he could respond by recommending termination.

Tucker raises an initial challenge to this court's jurisdiction to hear Messer's interlocutory appeal. This Court has jurisdiction over Messer's appeal only if it turns on a question of law; we do not have jurisdiction if Messer is merely challenging the sufficiency of the evidence to support the district court's denial of his motion for summary judgment on qualified immunity grounds. Johnson v. Jones, 515 U.S. 304, 313–18, 115 S.Ct. 2151, 2156–58 (1995); Cook, 414 F.3d at

3

1315; Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996).

To establish a First Amendment claim of retaliation under § 1983, an employee must show that: "(1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action." Cook, 414 F.3d at 1318. The burden then shifts to the employer to show (4) that it would have made the same decision even absent the protected speech. Id. The first two factors are questions of law, commonly referred to as the Pickering/Connick test. Id. The latter two are questions of fact that go to "whether the alleged adverse employment action was in retaliation for the protected speech." Id.

Most of the protected speech involved statements Tucker made urging more hiring of minorities and expressing his concern about the treatment of minority students and students at the CLC. In any event, Messer concedes that Tucker's speech involved a matter of public concern, thus satisfying the first element. Messer's initial argument is that Tucker cannot satisfy the second element of the Pickering/Connick test. However, in his brief Messer actually concedes that Tucker's free speech interests outweighed his own interest in effective and efficient fulfillment of his responsibilities which is what the second element is

4

about.  Messer states that "[t]he timing of Mr. Tucker's speech could not have impeded Mr. Messer's ability to perform his duties."  App. Br. at 45.  He further states that "Mr. Tucker's speech did not impede Mr. Messer's ability to perform his duties, [his] continuous insubordination did."  Id.  Messer also suggests no interests of the School Board that justified interfering with Tucker's speech.  If Tucker's speech did not impede Messer's interest in performing his duties, as Messer concedes, Messer did not have an interest in curtailing that speech which could outweigh Tucker's First Amendment interest in speaking on matters of public concern.

What Messer is actually arguing is that certain insubordinate behavior by Tucker justified his termination.  There were thirty-two specifications of insubordination including, for example, failure to follow proper leave procedures, lying about the purpose of an absence from the CLC, intentionally being late for meetings, and making some statements that Messer does not concede were protected speech.  This argument goes to whether the termination of Tucker was in retaliation for his protected speech or was for conduct other than protected speech, an inquiry that belongs under the third and fourth prongs of the test.

The district court determined that a reasonable jury could find a causal connection between Tucker's protected speech and his termination.  Messer's

arguments to us go only to whether there is enough evidence of a causal connection to establish that the termination was in retaliation for the protected speech. This is a question of fact and Messer's arguments are that the evidence is insufficient to permit factfindings of retaliatory motive. This is exactly the sort of sufficiency of the evidence question which we have no jurisdiction to review interlocutorily.

The qualified immunity inquiry also requires us to determine if the law was clearly established at the time of the alleged violation. If Messer had raised an argument that the law was not clearly established at the time he recommended Tucker's termination that would have been a question of law over which we would have interlocutory appellate jurisdiction. Messer's arguments, however, are that Tucker was fired for his insubordination and not in retaliation for his protected speech. Messer does not contend that the law prohibiting an employer from retaliating against an employee for the employee's exercise of constitutionally protected speech was not clearly established at the time Tucker was fired. He is arguing only that his termination of Tucker was not an act of retaliation.

Messer attempts to state a legal issue by arguing that it was not clearly established that terminating a teacher "who had thirty incidents of misconduct, one of which involved barring two male children from school until they repaid him twice the cost of ladies' shoes the teacher purchased for them" would violate

federal law. But Tucker does not contend that firing him for that alleged reason would have violated the First Amendment, and the district court did not imply that it would have. Instead, the dispute is: was Tucker fired for a reason such as that which does not involve his admittedly protected speech, or was he fired because of his protected speech? Characterizing this evidentiary sufficiency dispute as one of law is not enough to mask its true nature.

Messer relies on cases where we have stated that "a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." See Martin v. Baugh, 141 F.3d 1417, 1420 (11th Cir. 1998); see also Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir. 1989). The problem with Messer's argument is that those cases were discussing the "intensely fact-specific" legal determinations that must be made under the first two prongs of the Pickering/Connick test. See Martin, 141 F.3d at 1420; Dartland, 866 F.2d at 1323. In those cases, this Court considered (1) whether certain speech was constitutionally protected or (2) whether the employer's interest in effectively performing his duties outweighed the employee's interest in making the protected speech. Id. We held that those are questions of law not susceptible to bright-line rules. Id. However, as we have already noted, Messer is not arguing about those questions of law. He has conceded the first two prongs of the Pickering/Connick

7

test and disputes only the sufficiency of the evidence under the third and fourth prongs of it. This being nothing more than an evidentiary sufficiency dispute, we have no interlocutory appellate jurisdiction to decide it. Accordingly, we will dismiss Messer's appeal from the district court's denial of qualified immunity. This dismissal is without prejudice to pursuit of the defense at trial. See Cottrell, 85 F.3d at 1487–88.

## II.

We have jurisdiction over the remaining issues we are going to address because the district court directed the entry of final judgment under Fed. R. Civ. P. 54(b) as to the claims on which it granted summary judgment for the defendants. See In re Yarn Processing Patent Validity Litigation, 680 F.2d 1338, 1339–40 (11th Cir. 1982).

A grant of summary judgment is subject to de novo review. Key West Harbour Dev. Corp. v. City of Key West, 987 F.2d 723, 726 (11th Cir. 1996). We view the evidence and all factual inferences in the light most favorable to Tucker to determine whether any genuine issue of material fact exists and whether the defendants are entitled to judgment as a matter of law. Id.

### A.

Tucker cross-appeals the district court's grant of summary judgment to

8

Messer on Tucker's § 1981 retaliation claim.[1]  The district court held that Messer was not subject to suit under § 1981 in his individual capacity "because there is no evidentiary basis for a claim of racial bias in any action that Messer took."  Tucker argues that he does not have to show racial bias because his termination was in retaliation for his opposition to race discrimination.

This Court has recognized that § 1981 includes a cause of action for retaliation, but the elements of a claim for retaliation under § 1981 are not settled. See Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412–13 (11th Cir. 1998); see also Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001) (noting that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit.").  A plaintiff may bring a § 1981 claim not only for racial discrimination, but also for retaliation due to his opposition to race discrimination.  See Pinkard v. Pullman-Standard, 678 F.2d 1211, 1229 (5th Cir. Unit B 1982)[2] (holding that district court erred in granting judgment to the defendant because the plaintiff had demonstrated that his discharge

---

[1]Messer and the Board both argue in footnotes in their briefs that Tucker failed to comply with Fed. R. App. P. 3 because of a defect in his "Civil Appeal Statement."  Rule 3 requires an appellant to timely file a notice of appeal which must "designate the judgment, order, or part thereof being appealed."  Fed. R. App. P. 3(a)(2) & (c)(1)(B).  Tucker filed a timely notice of appeal stating that he appealed "from the February 17, 2005 order granting partial summary judgment against him."  This was sufficient to comply with Rule 3.

[2]Decisions of Unit B of the former Fifth Circuit, even those made after October 1, 1981 are binding on this Court.  Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982).

9

was tainted by his advocacy of minority rights). In <u>Pinkard</u> this Court explicitly recognized that § 1981 claims "may be based upon retaliatory action taken against an employee for the employee's lawful advocacy of the rights of racial minorities." <u>Id.</u> at 1229 n.15.

Pinkard was decided prior to the Supreme Court's decision in <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 109 S. Ct. 2363 (1989), which significantly narrowed the reach of § 1981. After <u>Patterson</u>, Congress amended § 1981 in 1991 to restore § 1981 to the broader interpretation recognized pre-<u>Patterson</u>. 42 U.S.C. § 1981(b). That amendment was a direct response to <u>Patterson</u> and its progeny. <u>See</u> <u>Andrews</u>, 140 F.3d at 1410–11 (discussing history of § 1981). Thus, while <u>Pinkard</u> is relevant, it does not address "the types of retaliation claims cognizable under § 1981 in light of the Civil Rights Act of 1991." <u>Id.</u> at 1412. We have, however, cited <u>Pinkard</u> in support of § 1981 retaliation claims brought after the Civil Rights Act of 1991. <u>See</u> <u>Andrews</u>, 140 F.3d at 1412; <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1007 (11th Cir. 1997).

Messer relies on our decision in <u>Little v. United Technologies</u>, 103 F.3d 956 (11th Cir. 1997), to support his defense that Tucker had to show racial bias to survive summary judgment. In that case Little brought a § 1981 retaliation claim against his employer arguing that his employer unlawfully retaliated against him

10

when he complained to his supervisor about another employee's use of a racial slur. Id. at 958. We affirmed summary judgment for the employer because Little had not produced any evidence "that the discrimination or retaliation allegedly levelled against him was due to his race." Id. at 961.

On the other hand, Tucker relies on our decision in Andrews. There we recognized that § 1981 retaliation claims are viable after the 1991 amendment to § 1981, but explained that whether a particular claim is cognizable depends on the specific nature of the retaliation claim. Andrews, 140 F.3d at 1412. We distinguished Little and held that dismissal of the plaintiff's claim was improper because she had "allege[d] discrimination based on her race and retaliation due to filing a race-based claim with the EEOC." Id.

Messer contends that Little and Andrews establish that a plaintiff must also bring a claim of race discrimination in order to bring a claim of retaliation under § 1981. Although both of those cases did involve race discrimination and retaliation claims we have never held that one requires the other. Additionally, we have noted that at least some § 1981 claims of employment discrimination are analyzed in the same manner as Title VII. See Standard v. A.B.E.L. Servs, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (explicitly addressing a Title VII race discrimination claim with the understanding that the same analysis applied to the § 1981 claim because

11

both statutes "have the same requirements of proof and use the same analytical framework"); Howard v. BP Oil Co., 32 F.3d 520, 524 n.2 (11th Cir. 1994) (same). Title VII does not require a plaintiff bringing a retaliation claim to also bring a race discrimination claim. However, we also recognize that § 1981, unlike Title VII, is directed exclusively toward racial discrimination and, as a result, the plaintiff's claim must allege discrimination due to race.

Recognizing that a plaintiff's claim must be about racial discrimination does not require us to impose the strict limitation on § 1981 retaliation actions that Messer would have us impose. Ruling out a § 1981 retaliation claim unless it was coupled with a non-retaliation race claim would go a long way toward eviscerating our holding in Andrews which recognizes a separate and distinct cause of action for retaliation under § 1981.

Andrews does establish that § 1981 encompasses a cause of action for retaliation. This cause of action includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination. See Jackson, 130 F.3d at 1007 (noting that plaintiff employees who were retaliated against when they refused to participate in their employer's discrimination against non-white customers could proceed with a retaliation claim under § 1981(b)); Pinkard, 678 F.2d at 1229. Our decision in Little might be read

12

to require that the claimed retaliation be directly due to the race of the plaintiff, but we do not believe Little goes that far. If we were to read Little in that way all "retaliation" claims under § 1981 would be nothing more than race discrimination claims. That would not make sense in light of our holding in Andrews that there is a claim for § 1981 retaliation.

In Andrews we did recognize Little as a limitation on when a plaintiff properly states a prima facie case of retaliation under § 1981. The white plaintiff in Little failed to state a prima facie case based on his complaint about a co-worker's racial slur that was derogatory toward blacks because the plaintiff failed to allege discrimination due to his own race. See Andrews, 140 F.3d at 1412. The situation in this case is different. Tucker is an African-American who is claiming that he was retaliated against because of his complaints on behalf of African-American students and teachers. Therefore, the discrimination that forms the basis for Tucker's complaint is due to his race as an African-American. For that reason, Little does not preclude Tucker's § 1981 claim, and we will proceed to discuss whether Tucker has established the elements of a prima facie case.

Although we have not explicitly held that the elements of a § 1981 retaliation claim are the same as the elements of a Title VII retaliation claim, the parties do not argue that they are different. Instead, they base their arguments on

13

the Title VII framework. We will accept that joint position for purposes of this appeal and will analyze Tucker's claim using the analytical framework for a Title VII retaliation claim. (Because the parties have not raised the issue here, we express no opinion about whether Messer would be entitled to the defense of qualified immunity on this claim.)

To establish a prima facie case of retaliation "a plaintiff must show that (1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998). After a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment actions. Johnson v. Booker T. Washington Broadcasting Serv., 234 F.3d 501, 507 n.6 (11th Cir. 2000). If the defendant offers legitimate reasons, the plaintiff must respond by showing that the employer's reasons are a pretext for retaliation. Id.

Tucker engaged in statutorily protected expression when he filed the Office of Civil Rights (OCR) and EEOC complaints, and he suffered an adverse employment action when his contract was terminated. Whether there is sufficient evidence to permit a factfinder to find a causal link between Tucker's termination and any retaliatory animus that Messer may have had is a more difficult question.

14

Messer, as Superintendent, had the authority to and did recommend to the Board that Tucker's contract be cancelled. Upon Messer's recommendation the Board scheduled and held a four-day hearing on the charges against Tucker. The Board was responsible for the ultimate decision to terminate Tucker. Ala. Code § 16-24-9 (2003) (providing that only the board may cancel the employment contract of a teacher on continuing service status).

In Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999), we held that the plaintiff had no actionable Title VII sex discrimination claim in a similar situation. Stimpson's employer, the city, recommended her termination to the Board of Civil Appeals. Id. at 1330. The city had no power under Alabama law to terminate Stimpson. Id. After a three-day hearing the Board decided to terminate Stimpson and she brought a Title VII action alleging that she was terminated because of her sex. Id. at 1332. This Court held that the causal link between any discriminatory animus the City might have had and her termination was broken by the Board's hearing and its independent decision to terminate her. Id. at 1331.

In Stimpson we distinguished that case from previous ones in which we stated that a party with no power to actually terminate an employee might still be liable for the ultimate termination if the recommendation directly resulted in the

15

employee's discharge.  See Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1248 (11th Cir. 1998) (when the harasser and decisionmaker are not the same person the plaintiff must prove that the harasser's discriminatory animus caused the employer to terminate the plaintiff in order to establish an inference of causation); Zaklama v. Mt. Sinai Med. Ctr., 842 F.2d 291, 294 (11th Cir. 1988). One way for the plaintiff to show causation is to demonstrate that "the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.  In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."  Stimpson, 186 F.3d at 1332.

Tucker has not made such a showing here.  The Talladega Board is the only entity with the power to terminate Tucker.  After receiving Messer's recommendation the Board held a four-day hearing.  At that hearing Tucker was represented by counsel and was able to put on evidence and witnesses in his defense.  The facts relating to the procedure used for the termination in this case fall squarely within the holding of Stimpson, and therefore Tucker is unable to establish a genuine issue of material fact that his termination was the direct result of any retaliatory animus Messer might have held against him.  For that reason, Tucker is unable to establish a prima facie case of retaliation against Messer under § 1981.

16

B.

Tucker also appeals from the district court's grant of summary judgment to the Talladega School Board on his § 1981 and § 1983 claims. The district court concluded that Tucker had failed to demonstrate that the Board had an official policy of retaliating against employees who exercise protected speech, and, therefore, Tucker failed to get around the Board's <u>Monell</u> defense.[3]

The district court's decision was based on an incorrect understanding of <u>Monell</u>. See <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978). Tucker is not relying on a theory of <u>respondeat</u> <u>superior</u> based on Messer's recommendation that the Board terminate Tucker. Tucker's theory is one of direct liability. The Board had final policy-making authority with respect to the decision to discharge Tucker. This is sufficient to satisfy <u>Monell</u>; Tucker did not have to demonstrate that the Board had "an official policy . . . of retaliating against employees who exercise protected speech."

---

[3]The district court initially held that the Board was entitled to summary judgment because Tucker's § 1981 and § 1983 retaliation claims were precluded by the findings of the Alabama State Tenure Commission when it rejected his appeal of the Board's decision to terminate him. In response to Tucker's motion for reconsideration, the district court recognized that its preclusion holding was contrary to this Court's decision in <u>Carlisle v. Phenix City Bd. of Educ.</u>, 849 F.2d 1376 (11th Cir. 1988). The district court modified its order to also grant summary judgment to the Board on the basis of <u>Monell</u>. The Board conceded in its brief to this court that the Alabama Tenure Commission's decision is not preclusive as a matter of law. Therefore, we will not address further the district court's initial holding of preclusion.

1.

As we noted above with respect to the qualified immunity inquiry, to establish a First Amendment violation under § 1983, an employee must show that: "(1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action." Cook, 414 F.3d at 1318. The burden then shifts to the employer to show that it would have made the same decision even absent the protected speech. Id.

The Board does not argue that Tucker has not satisfied the first two elements of his prima facie case but focuses on whether Tucker demonstrated that his speech was a substantial part of the Board's decision to terminate him. The Board held a four-day hearing on Tucker's termination and considered the thirty-two reasons that Messer had offered as grounds for Tucker's termination. The Board ultimately relied on twenty-two of those reasons to conclude that Tucker had been guilty of neglect of duty, incompetence, and insubordination. Tucker argues that the long list of charges itself demonstrates that Messer and the Board were trying to "drum up" reasons for his termination and that some of the charges actually relate to his protected speech activity and, therefore, demonstrate that the Board was retaliating against him specifically for that protected speech activity.

18

Tucker argues that the Board had to undergo three separate investigations related to race discrimination because of his complaints to the Department of Education's Office of Civil Rights. In response to these investigations Talladega entered into two different conciliation agreements with the Department of Education. The Board had also received four months before Tucker's termination a determination letter from the EEOC in response to Tucker's complaint. That letter found probable cause to believe that the Board had retaliated against Tucker. Tucker argues that this letter "reopened old wounds" and encouraged the Board to look for a reason to terminate him. Tucker claims that he tried to speak to the Board on multiple occasions at public meetings but that the Board would not allow him to speak. He also complains that he presented multiple grievances to the Board and that these were all rejected.

As evidence of the Board's retaliatory motive Tucker cites statements made by the Administration's attorney at his hearing. In her opening statement at the hearing she stated: "Mr. Tucker has created—also created dissension as he's criticized the CLC. He's criticized that school over which he presides." In her closing statement the Administration's attorney discussed a reprimand letter from the former Superintendent to Tucker regarding his failure to constructively address issues at the CLC. The attorney noted that "instead of constructively addressing those [issues] with the superintendent, [Tucker] turned to the media and thereby

was not constructively addressing those issues."  Similarly, Tucker cites another statement by the Administration's attorney in the course of questioning a witness in which she explained that her questioning "has to do with creating dissension among not only the teachers but among the superintendent and giving a poor impression of the school board."

Tucker also points to two of the charges related to letters that he received from the former Superintendent reprimanding him for his public comments regarding the school over which he was supervisor.  Tucker contends that including these letters among the charges indicates animus toward him for his criticism of Board policies.  Another charge Tucker relies on was a reprimand Tucker received for leaving the CLC during school hours without notifying the Central Office.  Tucker indicated that he had a dental appointment but went to City Hall and was taped for an interview with the local news instead.

Tucker has presented sufficient evidence to create a jury question as to whether his protected speech was a substantial part of the Board's decision to terminate him.  We have recognized that Tucker's burden in this regard is "not a heavy one."  Stanley v. City of Dalton, 219 F.3d 1280, 1291 (11th Cir. 2000).  The burden shifts to the Board to demonstrate by a preponderance of the evidence that it would have made the same decision regardless of Tucker's protected speech.

Superintendent Messer presented the Board with thirty-two charges to

20

support his recommendation for Tucker's termination. The Board ultimately relied on twenty-two of those charges. The Board points to "the shoe incident" as the "catalyst" for Tucker's termination. Although Tucker disputes many of the factual details surrounding this incident he does not dispute that he took two boys from school to Wal-Mart without the knowledge of his supervisor and without the permission of the children's parents in order to buy dress code compliant shoes. The Board also relies on charges relating to other incidents as further legitimate reasons for its action. Tucker disputes many of the facts surrounding these incidents as well, but they include his failure to follow the proper procedure for handling student medication and failure to follow the proper reporting procedure when a student reported sexual harassment.

We agree with the district court that "the fact that Tucker was arguably a continuing thorn in the Board's side can form the basis for a logical, if weak, argument that the Board . . . [was] 'laying in wait' for Tucker." Because Tucker has produced enough evidence from which a reasonable jury could find that retaliation for his protected speech played a substantial part in the Board's decision to terminate him and the Board has not produced enough evidence to demonstrate that there is no genuine issue of material fact as to whether it would have made the same decision, a jury must decide the question of whether Tucker's termination was the result of his protected speech.

We make one additional observation about Tucker's reliance on the alleged retaliatory motivations of Messer in recommending his termination. The Board did not ratify any of Messer's motivation. To prove that his speech played a substantial part in the Board's decision to terminate him and to dispute whether the Board would have made the same decision absent his speech, Tucker must prove retaliatory motive on the part of the Board itself. In order for the Board to be liable for any unconstitutional motive of Messer it must have ratified not only Messer's recommendation, but the unconstitutional basis for it as well. Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002). Mere knowledge of unconstitutional motive by Messer is insufficient for ratification. Id. at 1298. For the same reasons that we concluded the Board was not the "cat's paw," we conclude the Board did not merely ratify the allegedly unconstitutional basis for Messer's recommendation to terminate Tucker. The Board held a four-day hearing at which Tucker was represented by counsel and able to put on evidence and witnesses in his defense. The Board made its own decision and Tucker has presented enough evidence for a factfinder to conclude that the decision was the result of retaliatory animus on the part of the Board itself.

2.

Tucker also cross-appeals the district court's grant of summary judgment to the Board on his § 1981 retaliation claim. Section 1981 does not provide an

independent cause of action against state actors. Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000). Any such claim must be brought under the remedial provisions of § 1983. Id. Therefore, Tucker may not rely on a theory of respondeat superior based on any alleged retaliatory motive of Messer. Id. at 893. As we have just noted, Tucker must demonstrate that the Board itself acted with retaliatory motive without regard to the motive of Messer and he has presented sufficient evidence for a factfinder to make that finding.

Because the parties have assumed that the Title VII retaliation framework also applies to this § 1981 retaliation claim, we will also. The Board does not independently argue the merits of the elements of Tucker's § 1981 claim and, therefore, we will also assume that the Board concedes that Tucker engaged in a protected activity and suffered an adverse employment action. We will further assume that the Board's arguments that it would have made the same decision with respect to Tucker's First Amendment § 1983 claim apply with equal force to this § 1981 claim.

Tucker's protected activity consists of his complaints filed with the Department of Education's OCR and his EEOC complaint. Tucker filed OCR complaints in October 2000, April 2001and January 2002. OCR initiated investigations as a result of all three complaints and the Talladega School District agreed to take certain steps in response to two of the investigations. Tucker filed

23

an EEOC complaint on February 26, 2001. Two years later, on February 6, 2003, the Board received an EEOC determination letter stating that there was reasonable cause to believe Tucker had suffered discrimination in retaliation for his activities. Although the receipt of the letter does not constitute a protected activity, Tucker attempts to establish causation by arguing that the letter "reopened old wounds" and caused the Board to revisit all of Tucker's prior OCR and EEOC activity. Tucker further argues that the Board had knowledge of all of his OCR and EEOC activity and that the Board that terminated him was composed of the same members at the time of the OCR and EEOC investigations. As we stated above, we believe Tucker has presented enough evidence from which a reasonable jury might infer that the Board was "laying in wait" for him. Therefore, we will consider the legitimate, non-discriminatory reasons that the Board offers for its termination of Tucker.

Because the Board relies on the same reasons here as it relied on to demonstrate that it would have made the same decision for purposes of Tucker's First Amendment claim, our analysis is the same. The Board offered legitimate, non-discriminatory reasons for its decision to terminate Tucker. However, we are unable to say that there is no genuine issue of material fact that Tucker was terminated for these reasons instead of in retaliation for protected conduct. A jury needs to decide that factual issue.

## III.

Messer's appeal from the district court's denial of qualified immunity is DISMISSED for lack of jurisdiction. The district court's grant of summary judgment to Messer on the § 1981 claim is AFFIRMED. The district court's grant of summary judgment to the Board on the § 1983 First Amendment retaliation claim and the § 1981 retaliation claim are REVERSED.